## Megargee's Estate.

*Wills—Estate pur autre vie—Income.*

1. A testator may lawfully create an estate *pur autre vie* in income.

2. Under a gift to take effect on the death of testator's widow "in trust to pay the said net rents, issues, profits, interest and income unto all my [testator's] children that shall then be living and the lawful issue of such of them as shall then be deceased, their respective heirs, executors, administrators and assigns for and during all the term of the respective natural lives of them my said children and the life of the survivor of them, so nevertheless that such lawful issue take and receive such part and share only as her or their deceased parent would have had and taken if then living," with a gift over of the principal immediately upon the expiration of one year after the decease of the last surviving child "unto all and every my grandchild and grandchildren if there be more than one that shall then be living and the lawful issue of such of them as shall be deceased, their respective heirs, executors, administrators and assigns," etc., a grandson, the only surviving child of a daughter who predeceased the widow, does not take an absolute interest in the income until the period of distribution of the capital and on his death such income is payable to his children as distinguished from his executors.

*Evidence—Competency of witness—Party dead—Trusts and trustees— Act of May 23, 1887.*

3. At the audit of an account filed for deceased trustees, a person claiming under a contract made by him with the deceased trustees is incompetent, under the Act of May 23, 1887, P. L. 158, to testify as to the existence of such contract, inasmuch as his interest is adverse to the rights of the deceased trustees, which have passed to the substituted trustees.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1878, No. 214.

GEST, J., Auditing Judge.—Samuel Megargee died on June 29, 1865, leaving a will, by which he devised his residuary estate to Daniel M. Fox and Robert M. Logan and the survivor of them in trust "to pay the income to his wife Margaret for the term of her natural life and widowhood and after her decease or remarriage in trust to pay the said net rents, issues, profits, interest and income unto all his children that should then be living and the lawful issue of such of them as should then be deceased, their respective heirs, executors, administrators and assigns, for and during all the term of the respective natural lives of them his said children and the life of the survivor of them so nevertheless that such lawful issue should take and receive such part and share only as his, her or their deceased parent would have had and taken if then living . . . and immediately upon the expiration of one year after the decease of the longest or last survivor of them his said children, then he gave, devised and bequeathed all his said residuary estate, real and personal and mixed whatsoever and wheresoever and including all net income thereof accumulated between the day of the decease of the last surviving child and the expiration of the said one year thereafter unto all and every his grandchild and grandchildren if there be more than one that should then be living and the lawful issue of such of them as should then be deceased, their respective heirs, executors, administrators and assigns forever in equal parts and shares by heads and not by stocks so nevertheless that such lawful issue take and receive such part and share only as his, her or their deceased parent would have had and taken if then living."

Robert M. Logan resigned as trustee and was discharged March 22, 1879. Daniel M. Fox died on March 20, 1890. Henry K. Fox was appointed co-trustee Feb. 17, 1883, and died Aug. 15, 1925. Samuel Megargee Wright was appointed co-trustee on Sept. 15, 1906, and died on Dec. 23, 1926, leaving a will admitted to probate on Dec. 30, 1926, when letters testamentary were granted to Heloise C. Wright, who has filed this account. By his will, the testator authorized his wife and such of his children as should be over twenty-

one years of age, or in case of the decease of his wife, the said children over the age of twenty-one years to fill all vacancies that may occur from time to time in the executorship and trusteeship under the will, as often as the same may happen, so that the entire burden of duty herein shall not devolve alone upon any one surviving or acting executor or trustee, namely, to nominate with unanimity and with the approval of the then for the time being acting or surviving executor or trustee, some other suitable person or persons to the Orphans' Court of the County of Philadelphia, and if the said court shall ratify and approve the same, then the appointee shall stand as the co-executor or co-trustee with him who shall remain or be then acting as fully and with the same powers, duties and directions co-jointly with such acting or surviving executor or trustee, or in both capacities, as the case may be, as though originally named and appointed by the testator in his will. And, accordingly, on Feb. 15, 1927, the court appointed the Fidelity-Philadelphia Trust Company and Henry G. Brengle, named by Hannah or Hannah M. Chapman, surviving child of the testator, as trustees under the will.

Margaret Megargee, the widow of the testator, died on April 12, 1893. The testator left him surviving children and issue of deceased children who also survived Margaret Megargee, viz., Hannah or Hannah M. Chapman, a daughter of decedent, who is living and without issue, and Samuel Megargee Wright, a grandson, being the only surviving child of Mary Wright, a daughter of decedent, who predeceased Margaret Megargee, widow of decedent, on June 24, 1869. Samuel Megargee Wright, who died Dec. 23, 1926, has issue now living, being Witney Wright, Margaret M. Wright and Hannah Wright Sullivan, all of age. Calhoun Megargee, a son of the testator, died in 1880, leaving issue a daughter, Mary C. Megargee, who died in 1881, an infant. Other children of the decedent died without issue.

This account is filed by Heloise C. Wright, executrix of Samuel Megargee Wright, as the account of Henry K. Fox and Samuel Megargee Wright to Aug. 15, 1925, date of the death of Henry K. Fox, and of Samuel Megargee Wright, surviving trustee, from Aug. 15, 1925, to Dec. 23, 1926, the date of his decease. She has also filed a supplemental account as executrix of Samuel Megargee Wright to May 5, 1927. Strictly speaking, this is irregular. On the death of Henry K. Fox, his executor, together with Samuel Megargee Wright, surviving trustee, should have filed their account as trustees, and, on the death of Samuel Megargee Wright, his executrix should have filed his account as trustee, and the succeeding trustee should without undue delay have been appointed. Had the regular and orderly procedure been followed, much of the ensuing trouble and litigation might have been avoided, as no account has been filed for many years. This account, however, as filed, is fortunately not objected to by any party in interest and will be confirmed.

The claim was presented of Henry L. Fox and Townsend Sharpless, trading as Daniel M. Fox & Sons, for rent of office space and facilities, alleged to have been engaged by Henry K. Fox and Samuel Megargee Wright, deceased, surviving trustees, for the purposes of the trust estate, from June 10, 1921, to July 18, 1927, six years, one month and eight days, at $50 a month, totaling $3663.33, with interest, $705.19, total $4368.52, and there was a credit allowed of a payment on account of $589.85, leaving a balance which was claimed of $3778.67. Townsend Sharpless, being a member of the firm of Daniel M. Fox & Sons, composed in 1921 of himself and Henry K. Fox, was offered as a witness to prove the contract alleged to have been made in 1921 by Henry K. Fox and Samuel Megargee Wright, the trustees, who are now both deceased, with the said firm, of which, at the time of the alleged contract, Henry K. Fox was the surviving partner of Daniel M. Fox. The competency of this

witness was objected to as to all matters occurring before the deaths of the said trustees. The objection was overruled; an exception was noted, and the testimony was received, subject to the subsequent ruling of the court upon the competency of the witness. I have since considered the question with care, with the aid of the briefs submitted and the decisions therein cited.

Mr. Gilbert, on behalf of the claimants, cited several cases to which I shall now refer. Some of them, such as Dillon's Estate, 269 Pa. 234, and Danish Pride Milk Co. v. Marcus, 272 Pa. 340, relate to the law of agency. In the former case, an agent, acting for a disclosed principal, was held competent, after his principal's death, to prove a contract of employment of an attorney-at-law. It was held, and the decision was clearly correct, that the agent had no such adverse interest to the principal's estate as to disqualify him. In Danish Pride Milk Co. v. Marcus, 272 Pa. 340, an agent made a contract of sale which was confirmed by the vendor; the agent died and the vendee was held to be a competent witness to testify to the oral agreement made with the agent, the latter not being a party to the thing or contract in action. So, in Gill's Estate, 268 Pa. 500, an attorney-at-law who drew an agreement was held to be a competent witness after the death of one of the parties to the agreement, which case is similar to Sargeant v. National Life Ins. Co., 189 Pa. 341, and American Life Ins. Co. v. Shultz, 82 Pa. 46, both cases of agency. The learned counsel for the claimant argued that the trustees in this case, Henry K. Fox and Samuel Megargee Wright, were agents for the estate of Samuel Megargee, but this proposition hardly needs refutation. The estate was not a person but a thing. It was not a legal entity, or at most persona ficta, and could not appoint an agent. The distinction between a trustee and an agent is vital and is not a mere matter of words or description. None of these cases, or others like them that may be cited, have any application to the present. In Norristown Trust Co. v. Lentz, 30 Pa. Superior Ct. 408, which was also cited, the facts are likewise very different. Burns held a judgment against Lentz, and both plaintiff and defendant died. The administrator d. b. n. c. t. a. of Burns sued the executor of Lentz on a sci. fa. sur judgment and certain legatees under the will of Lentz were held competent to prove that the judgment had been paid by the executor of Lentz to the original executor of Burns, then deceased. The court said that while the witnesses were interested, their interest was not adverse to the Lentz estate, and while it was adverse to the Burns estate, they were competent as to all matters since the death of Burns and were not rendered incompetent by the death of the original executor of Burns, because he was not a party to the thing or contract in action, viz., the judgment and the bond on which it was entered. I cannot see that this case is any authority for the present. The only decision that merits consideration is Rozelle v. Lewis, 37 Pa. Superior Ct. 563. There the syllabus reads: "Where an executor with power of sale executes a contract in writing to sell the land of his testator and the executor subsequently dies, the other party to the contract may testify as to matters occurring between him and the executor in the latter's lifetime." The syllabus is too broadly worded. Catharine Schadt owned two lots of ground described as Nos. 7 and 8. Schadt's two executors, Tropp and Scheidell, under a power of sale in the will, sold No. 7 to Rozelle, the plaintiff, and Tropp died. Scheidell, as surviving executor, agreed to sell No. 8 to Lewis's sons, who assigned to Lewis, the defendant, and Scheidell conveyed No. 8 to Lewis with warranty against all persons claiming from Catharine Schadt or her executor. A dispute arose between Rozelle and Lewis as to the location of the line between the two properties, and Rozelle brought ejectment against Lewis. As the court said: "Tropp, it is true, was a party to the contract under

Megargee's Estate.

which the plaintiff claims, but the right which the plaintiff derived thereby was not the personal right of Tropp, but the right of the estate which he represented. Again, the subject of controversy was the right to the possession of the strip of land described in the writ, and, to state the proposition in another form, the interest which the defendant represented in that subject of controversy was not the interest of Charles Tropp, but the interest of Catharine Schadt, or the beneficial owners of her estate, and if this be true, the plaintiff in testifying was not testifying under the presumed influence of an interest that was adverse to the right of Charles Tropp." It seems clear to me, therefore, that Rozelle v. Lewis does not touch the present case. On the other hand, Fisher's Estate, 7 Pa. C. C. Reps. 17, is an authority against the competency of the witness, and Ashman, J., in that case carefully distinguished between an executor or administrator and a mere agent. So in Irwin v. Nolde, 164 Pa. 205, Nolde, claiming as a trustee, brought an action of trespass q. c. f. against Irwin for damages for forcible ejectment of the plaintiff, who claimed under an alleged lease from the society of which the plaintiff was trustee. The defendant being dead, the plaintiff was offered as a witness and was held incompetent.

It may be that there is no decision in Pennsylvania that can be said to be on all fours with the present case, but I have no doubt that it comes directly within the letter and the spirit of the Act of May 23, 1887, § 5, cl. e, P. L. 158: "Nor, where any party to a thing or contract in action is dead and his right thereto or therein has passed, either by his own act or the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract or any other person whose interest shall be adverse to the said right of such deceased party be a competent witness to any matter occurring before the death of said party," etc. Every phrase of this act is relevant here. The trustees under the will were alleged to be a party to the contract and their right has passed to the substituted trustees who are a party to the record and represent the interest of the testamentary trustees; so how can Townsend Sharpless, being the surviving party to the contract, be a competent witness, his interest being adverse to the rights of the deceased trustees? The question admits of only one answer, and as I am convinced that Sharpless was incompetent, I strike out all of his testimony relating to matters that occurred before the deaths of Henry K. Fox and Samuel Megargee Wright. It is, therefore, unnecessary and, I think, inadvisable to consider it or the serious questions raised as to the credibility or improbability of his testimony. As the claim for rent was based solely on the alleged contract therefor and there was no evidence to support it other than the testimony of Townsend Sharpless, I dismiss this claim. And what has been said concerning this claim applies also to the claim of Townsend Sharpless individually for appraisals of real estate made for investment purposes from July, 1923, to the death of Samuel Megargee Wright, the surviving trustee, $350, plus interest, and, less a credit admitted, aggregating $336.46. This claim is also dismissed for the same reasons. . . .

Another question was argued concerning the distribution of the one-half share of the income formerly payable to Samuel Megargee Wright during his lifetime. It was contended by Heloise C. Wright, as his executrix, that this income now becomes payable, as an estate pur autre vie, to her as executrix, until the death of Hannah Chapman, when, under the will, the trust will terminate and the estate be distributable to the testator's grandchildren then living and the issue of such as shall then be deceased in equal shares "by heads" (that is, per capita), and not "by stocks" (that is, per stirpes), so,

nevertheless, that such lawful issue shall take such part or share only as his, her or their deceased parent would have taken if living. Mr. Trinkle relied upon Little's Appeal, 81 Pa. 190, and also referred to what was said by Hanna, P. J., in a prior adjudication, Dec. 15, 1903. There the administrator of a deceased granddaughter of testator, Mary C. Megargee, she being the daughter of a deceased son, Calhoun Megargee, claimed that her estate was entitled to her deceased father's share of the income, and Judge Hanna held that she was not entitled because the granddaughter died in the lifetime of the widow, but added, "had she survived the widow, a very different question would have arisen. She would then take her father's share, and, in the event of her death in the lifetime of her survivor (Mrs. Chapman), it would be payable to her administratrix until the death of Mrs. Chapman." And, consequently, Judge Hanna awarded the income in equal shares to Mrs. Hannah Chapman, the daughter, and Samuel Megargee Wright, the grandson, of testator, disregarding the claim of the administratrix of Mary C. Megargee. This remark of Judge Hanna was, in the circumstances, a mere *dictum* and cannot be considered as establishing the law of the case. And, as the law stood when he filed his adjudication, he might very possibly have been correct; but the later authorities have so affected the principle of Little's Appeal, on which Mr. Trinkle relies, that it cannot be considered as ruling the present case. The language of the two wills is different, and I think the present case is governed by Rowland's Estate, 141 Pa. 553; s. c., 151 Pa. 25; Maxwell's Estate, 261 Pa. 140, and other cases cited by counsel, and I am, therefore, of the opinion that Samuel Megargee Wright's one-half share of the income is now payable in equal shares to his three children, and it will be so awarded.

*William N. Trinkle* and *Keller Hughes Gilbert*, for exceptions.

*Clement B. Wood,* contra.

STEARNE, J., May 26, 1928.—Testator died in 1865, leaving a widow and seven children. By his will he gave the residue of his estate, in trust, to pay the income to his wife for life, or widowhood, and then in further trust:

"And from and immediately after the decease or intermarriage of my said wife, whichever shall first happen, then in trust to pay the said net rents, issues, profits, interest and income unto all my children that shall then be living and the lawful issue of such of them as shall then be deceased, their respective heirs, executors, administrators and assigns, for and during all the term of the respective natural lives of them my said children and the life of the survivor of them so nevertheless that such lawful issue take and receive such part and share only as his, her or their deceased parent would have had and taken if then living . . . and from and immediately upon the expiration of one year after the decease of the longest or last survivor of them my said children, then I give, devise and bequeath all my said residuary estate, real and personal and mixed whatsoever and wheresoever and including all net income thereof accumulated between the day of the decease of the said last surviving child and the expiration of the said one year thereafter unto all and every my grandchild and grandchildren if there be more than one that shall then be living and the lawful issue of such of them as shall then be deceased, their respective heirs, executors, administrators and assigns, forever, in equal parts and shares by heads, and not by stocks, so nevertheless that such lawful issue take and receive such part and share only as his, her or their deceased parent would have taken if then living. . . ."

In 1893 the widow died, having outlived all of the seven children, except one daughter, who still survives. A grandson (who was a child of a deceased

daughter) was the only surviving issue of deceased children who was living at the death of the widow.

The grandson died in 1926. From 1893 (the date of the widow's death) until 1926, the daughter and the grandson shared the income equally.

At the audit of the account, the executrix of the grandson claimed the one-half share of income, theretofore paid unto him, until the termination of the trust (on the death of the surviving daughter). The grandson left surviving him three children, who contend that this share is payable unto them under the terms of the will.

The Auditing Judge declined to award this share to the executrix of the grandson, and awarded it to his children. The executrix filed exceptions to the award.

Exceptant's contention is that the testator created a vested estate *pur autre vie* in the income which he gave to his children and issue of deceased children who should be living at the death of his widow until the death of the last surviving child. She relies upon Little's Appeal, 81 Pa. 190, and the cases following it. On the other side, it is urged that the will exhibits an *intention* to preserve the estate for the grandchildren of the testator and their issue until the death of the survivor of his children, when division of the principal is to be made to them. They insist that the doctrine of Rowland's Estate, 141 Pa. 553, and similar cases, is applicable, and not that of Little's Appeal.

It is undoubtedly true that a testator may lawfully create an estate *pur autre vie* in income. An excellent statement of this principle has been given by our President Judge in Leech's Estate, 18 Dist. R. 527 (page 531), affirmed in 228 Pa. 311: ". . . there is no difference in substance between a gift of income and a gift of principal; there is no presumption that because the gift is of income, it must necessarily cease on the death of the beneficiary. It is quite possible to make a bequest of income to cover the entire period of the trust, and then the beneficiary will transmit his property in the income, in case of his death, to those who succeed to his estate, either under his will or under the intestate laws."

Judge Lamorelle again emphasized this thought in his dissenting opinion in Babcock's Estate, 18 Dist. R. 453 (page 456): "An estate *pur autre vie*, like its title, is somewhat archaic and infrequent, but it is neither unlawful nor unreasonable. If a testator may devise an estate to A for life and to B in fee, he may reasonably give the income of a trust fund, different in character, to C for the life of A, and then, on the death of A, give the principal of the trust fund to some one else."

The leading authority for this legal principle is Little's Appeal, *supra*. In that case the testator created a trust which was to continue until the marriage or death of his daughter Elizabeth, to whom, after his wife's death, he gave two-thirds of the income and the remaining one-third to his daughter, Martha. There was no gift over of the income upon the death of Martha, nor was there an express limitation of the income to Martha's life. Martha died intestate, leaving a husband and children, in the lifetime of Elizabeth, who had remained unmarried. It was there held that this was a vested gift to Martha for the life of Elizabeth, subject to being determined by her marriage, and, therefore, passed to Martha's legal representatives.

While conceding the existence of this legal principle, nevertheless, it is always the *intention* of the testator which must govern. As was said by Penrose, J., in Babcock's Estate, *supra* (page 454): "The duration of an estate created by will is always a question of intention, to be determined, not

by the precise, literal meaning of the words, but by the effect and consequences and by its harmony with the general scheme of the will, taken in its entirety."

In Rowland's Estate, the will directed that certain sums be paid out of the income to certain of his children annually during life, the net balance of income to be divided annually, *per stirpes*, among his five living children, the issue of two deceased children, and the issue of any other of his children who might die leaving issue. Such distributions were directed to be made annually until the death of the last survivor of the testator's children, when the principal was to be divided equally, *per stirpes*, among the issue then living of the seven children. A son of the testator died, leaving no issue surviving him, and, as in the present case, the administrator of his estate claimed the share of income theretofore paid to the son until the death of the last surviving child. It was there held that it was only living children of the testator and living issue of deceased children, the latter to take in the right of the parent, or *per stirpes*, that shared in the income. It was decided that each child living at the death of the testator took a vested interest in the income, but for his own life only. Justice Williams said, page 560: "An examination of the several provisions of the will shows that the intent which dominates the instrument is to preserve the entire estate for the grandchildren, and to make division among them *per stirpes* on the death of the last surviving child."

And, again, on page 561: ". . . each child living at the death of the testator took a vested interest in the income, but reduces his interest to an estate for his own life. This effectuates the purpose of the testator. It provides for his own children while they live, and it secures his estate to his grandchildren without loss, when the event upon which their right to take as absolute owners shall happen."

The *test* as to whether any given case falls under Little's Appeal, or under Rowland's Estate, is found in the case of Huddy's Estate, 257 Pa. 528. This decision affirmed the judgment of the Superior Court, where the opinion was delivered by Mr. Justice Kephart, who said, on page 533: "All of the cases following Little's Appeal are distinguished by the absence of any purpose of the testator to appropriate the estate exclusively to a class of legatees," and cites Rowland's Estate and Babcock's Estate as illustrations of this latter principle.

Applying this test, which we believe to be the correct measure, we have examined all of the authorities cited by counsel and which we find reported. Following Little's Appeal are Ritter's Appeal, 190 Pa. 102; Hildebrant v. Hildebrant, 42 Pa. Superior Ct. 190; Spang's Estate, 49 Pa. Superior Ct. 314; Harned's Estate, 54 Pa. Superior Ct. 47; Bechtel's Estate, 85 Pa. Superior Ct. 14; Shuster's Estate, 4 D. & C. 119. In each of the foregoing cases an examination discloses the gift of income to individuals, either by name or designation, with no gift over to any *class* as such.

Another class of cases follows Little's Appeal. In these cases income is given to children for their respective lives, and upon death of a child during continuation of the trust, the testator directs the income of the deceased child's share to be paid to such deceased child's children or issue. See Leech's Estate, 228 Pa. 311; Dillon's Estate, 47 Pa. Superior Ct. 158; Lafferty's Estate, 59 Pa. Superior Ct. 24.

In these cases, while the children have life estates only, issue of a child substituted at the child's death are held to have an estate *pur autre vie*, on

the theory that the gift to the issue is not limited to a life estate, and there is no gift over of this share of income.

Under Rowland's Estate and the cases following it, the question is whether the testator *intended* to create estates *pur autre vie* or whether he *intended* to provide for distribution of the income among *living* descendants until the termination of the trust: Huddy's Estate, 257 Pa. 528; Maxwell's Estate, 261 Pa. 141; Lippincott's Estate, 2 D. & C. 1; Reeves's Estate, 8 D. & C. 277.

In Huddy's Estate, the bequest was to a niece for life, and, "from and immediately after her decease, then to pay the said income in equal shares to her children . . . and to the children of any of her said children who may be deceased . . . until the death of the last of my said niece's children."

The principal was then to be divided equally "between my said niece, grandchildren, and the issue of any grandchildren who may be deceased, *per stirpes*."

It was there held that a grandniece having died without issue, her interest in the income terminated with her death. Rowland's Estate was cited and the opinion of the Superior Court, reversing the court below, was sustained under the opinion of Mr. Justice Kephart hereinbefore referred to.

In Maxwell's Estate, a testator having eight children and owning certain stock bequeathed his residuary estate to trustees for the benefit of his wife for her life and directed his trustees, after her death, to hold said stock "for and during the lifetime of my children and the survivor of them and to pay out of the dividends realized therefrom the sum of $600 per annum to my daughter . . . during her lifetime, and the balance of said dividends, if any, to divide equally among my other children, share and share alike, the issue of any deceased child to take its parent's share. And upon the death of my said daughter . . . I order my said trustees to divide the entire dividends realized from my said stock equally among my children, share and share alike until the death of my last surviving child. Upon the death of my last surviving child, I order and direct my trustees . . . to sell my stock . . . and divide the proceeds equally among my grandchildren, *per stirpes*."

After the death of testator and his wife, one of their children died intestate, unmarried and without issue. It was there held that the testator intended the children and grandchildren to be the sole objects of his bounty and to confine the succession to the share of any dying without issue to the survivors, to the exclusion of personal representatives. Mr. Justice Potter, in rendering the opinion, said, page 143: "While there is no express gift over of any part of the income upon the death of one of testator's children before the arrival of the time fixed for final distribution of the principal, the will shows clearly an intention that the entire income shall be paid to testator's children and grand-children and to no other persons." Again, page 146: "Technically, the gift was *pur autre vie*. . . . Why should a mere fiction of the law be permitted to govern in such a case as this when it is apparent that the testator intended her children and grandchildren to be the sole objects of her bounty?"

With the light of the foregoing authorities and applying the test enunciated in Huddy's Estate, we have examined the words of the present will and have considered it from its four corners. We are irresistibly drawn to the conclusion that the testator had in mind two classes of beneficiaries, first, his children, and, second, his grandchildren. Clearly he desired his children or their issue *living* at the death of his widow to enjoy the income until the death of the last surviving child, when the principal should pass to his living grandchildren or *living* issue of deceased grandchildren. The words of the will show an *intent* to preserve the principal of the trust strictly for his descendants and distribution of the income until the time of distribution

arrives, *per stirpes*, among the living children and living issue of deceased children. He expressly excluded from income any children or issue of deceased children who might be deceased at the widow's death. The income was given to children "that shall then be living and the lawful issue of such of them as shall be deceased." It is a fair inference of intention that when the testator carefully limited the income at his wife's death to his children and their issue who might *then be living*, and provided for a distribution of the principal to the grandchildren or their issue *living* at such period of distribution, he intended to limit the enjoyment of income to *living* children and *living* issue of deceased children.

To summarize: The fact that the testator clearly limited the principal to his descendants *living* at the time of distribution; that the language used obviously limits the children to income for their "respective lives only;" and, also, that the division of income at the wife's death is clearly limited to children and issue of deceased children *then living*, all point to a *general intent* that the income shall be distributed from time to time among testator's descendants *living* at the time of distribution, rather than an intent to create an estate *pur autre vie*.

Great stress was laid at the argument upon the use of the words "their heirs, executors, administrators and assigns" in the gift of the income. It is to be observed that identical words are employed in the gift of the principal in remainder. Since the Act of April 8, 1833, P. L. 249, re-enacted in the Wills Act of 1917, words of inheritance or perpetuity are unnecessary to pass a fee in the absence of words of limitation: Rengier *v.* Kunzler, 246 Pa. 445. It is conceded that there was a vesting of an absolute estate in the income. The present inquiry, however, is to ascertain whether or not the vesting was for the life of the surviving child or was limited to the lifetime of the beneficiary. From a reading of the will as a whole and for the reasons hereinbefore given, we are of opinion that the vesting was for the life of the beneficiary only. We feel that the use of these words is not conclusive and controlling, that the testator intended to create, in the income, an estate *pur autre vie*.

Exceptant further contends that the question now raised was decided in this case in her favor by Judge Hanna in 1903, and is, therefore, *res adjudicata*. At that time the administrator of a deceased grandchild claimed a share of income. This was denied by Judge Hanna upon the ground that the grandchild had died in the lifetime of the widow and was, therefore, not one of the designated beneficiaries under the terms of the will. Judge Hanna did express an opinion that had the grandchild survived the widow, her administrator would have taken as herein contended. However, as pointed out by Judge Gest in the present adjudication, this opinion, not being necessary to the decision of the matter then before him, was "merely *dictum*," and is, therefore, not controlling in the present inquiry.

The Auditing Judge agrees with us that he did not intend in his adjudication to hold or imply that Little's Appeal has been overruled or modified by the later decisions herein quoted, but rather that Little's Appeal does not apply where the general intent of the will is to appropriate the estate exclusively to a given class of legatees. This principle had not been so emphatically and repeatedly enunciated by the Supreme and Superior Courts when Judge Hanna wrote his adjudication. At that time the courts were more inclined to follow the strict canon of construction of Little's Appeal rather than to seek and enforce the true intention of the testator to be discovered from the will in its entirety.

### Megargee's Estate.

After a careful review of the entire record, we are of opinion that the Auditing Judge was correct in his interpretation, and the exceptions of Heloise C. Wright, executrix under the will of Samuel Megargee Wright, are dismissed.

The Auditing Judge sustained objections to the competency of the testimony of claimants who presented rent claims and claims for fees for appraising real estate arising from contracts alleged to have been made by them with the deceased trustees. All of the cases pertaining to this subject have been analyzed and discussed in the adjudication, and we cannot profitably add anything to what the Auditing Judge has so well said. These exceptions are, therefore, dismissed.

All exceptions having been dismissed, the adjudication is confirmed absolutely.

LAMORELLE, P. J., dissenting.—It is said in Hawkins on Wills, Prop. I: "In construing a will, the object of the courts is to ascertain not the *intention* simply, but the *expressed intentions* of the testator, *i. e.*, the intention which the will itself, either expressly or by implication, declares, or (which is the same thing) the meaning of the words—the meaning, that is, which the words of the will, properly interpreted, convey," and, further (Prop. III), that "*technical* words and expressions must be taken in their *technical* sense, unless a *clear* intention can be collected to use them in another sense and that other can be ascertained." (Second Edition by Sanger, pages 1 and 5.)

Let us apply these fundamental rules to the will of Samuel Megargee.

The item pertaining to the trust is cited at length in the majority opinion of this court, and, therefore, need not again be set forth. Suffice it to say, that after creating a trust of the residuary estate, there is but one further reference to the *corpus* thereof; where, on the death of the survivor of his children, testator gives, devises and bequeaths all of his residuary estate unto his grandchild or grandchildren "then living" and the lawful issue of such as shall "then be deceased, their respective heirs, executors, administrators and assigns, forever. . . ."

Those to whom the Auditing Judge awarded the income are the three living children of Samuel Megargee Wright—the grandson who has recently died—and they admittedly have an interest in the principal, contingent upon their being alive at the termination of the trust; but nowhere in the will is there a gift of income to them at all.

In the same item of the will there is but one reference to income, and that is a gift of the income upon the death or remarriage of the widow, "unto all my children that shall *then* be living and the lawful issue of such of them as shall *then* be deceased, their respective heirs, executors, administrators and assigns. . . ." This is an absolute gift, by description, to certain persons contingent on their then existence. It is not to a class which may either diminish or enlarge, and the phraseology is similar to that of the gift of principal, a gift absolute; not for life at all, but for *the duration of the trust.* It may be stated as almost axiomatic that words—technical or otherwise—used more than once in the same item of a will, are to be treated as having the same or similar meaning. Unless, therefore, we ignore or eliminate the words "heirs, executors, administrators and assigns," so far as they refer to the gift of income, they must be considered as creating in apt words an absolute estate for the *life of the trust;* for note what follows: This income is to be paid to these particular persons and to no others "for and during all the term of the respective natural lives of them my said children and the life of the survivor of them," so that such lawful issue shall take the share his

deceased parent would have taken if "then" living. The "lawful issue" necessarily means the issue of any child of testator who is dead at the time the widow's interest in the trust ceases. Such issue can take only what its parent (child of testator) would have taken if then alive. Again, be it noted that there is no further gift of income in event that such issue afterwards dies; in a word, the persons to whom income is given or to whom income is to be paid is then and of that time fixed as a finality; and each person, child or issue of a dead child, takes an estate absolute on its face with the necessary right of transmission until the trust finally terminates by the death of the survivor of testator's children.

This was Judge Hanna's ruling in his adjudication on the account filed on the death of testator's widow, though it may not be treated as "the law of the case," as I understand the children of Samuel Megargee were not then made parties by due notice of the audit and question to be submitted for decision. While words of inheritance may not be essential to a gift in fee, it would seem manifest that the addition of such words cannot be seriously treated as showing an intention *not* to give in fee. Such in effect is the deduction to be drawn from the majority opinion. The very words used to indicate an intention *to do* a certain thing are construed as determining testator's purpose *not to do* that thing.

To brush aside an estate *pur autre vie* or during the life of a trust as a "technicality" is all very well, when it *is* a technicality and no more, as may be the case where the will, taken as a whole, manifests an intent to give but a life estate; but failure to recognize such estate where there is not only nothing in the will showing an intent otherwise, but, on the contrary, where the will specifically shows such intent, is not construction but destruction. We have in the instant case neither the Rule in Shelley's Case nor that against perpetuities before us; nothing but the right of testator to deal with his own as he deems fit; and so long as his will offends neither of these rules, it is our duty to find his intent in the language used by him and not in some fancied purpose of sending the estate "down his line." I admit, as admit I must, that a fee in principal passes without words of limitation, but I cannot admit that because such fee would pass, we may, in construing a will, ignore these words in a gift of income.

I find nothing in the cases cited by counsel and referred to in the majority opinion at variance with these my views, when considered with regard to the will in the instant case. It may not be out of place to suggest that in Rowland's Estate, 141 Pa. 553, the gift was not to one and his *heirs, executors, administrators and assigns.* On the contrary, there was a provision for annual distribution of income, not only to five children and issue of two deceased children, but also to the issue of any other children who might at any time have died leaving issue. Thus, *substitution* was clearly provided for in that will. Those answering the general description at each recurrent time for distribution were all and the only ones designated by testator, and these persons were treated as a fluctuating class. There, testator's intent was found in the words he used.

So, likewise, in Huddy's Estate, 257 Pa. 528, and Maxwell's Estate, 261 Pa. 140, the income was given to certain issue of deceased children in such manner as would justify an inference that the gift ceased on the death of the recipient.

In the will now under discussion there was no provision for alternates; those who answered the description at one particular time, the beginning of the trust for descendants, were the only ones for whom provision is made,

Megargee's Estate.

and, as before stated, they took for the life of the trust. No necessity existed for a gift over, for the one and only gift was absolute; the only condition on which issue could take at all was existence at the inception of their trust.

To sum up and to epitomize: A gift of principal at the termination of a trust cannot draw to it a gift of *interim* income, where testator has clearly defined the gift of income as passing otherwise. Such reasoning would not find testator's intention in the words used by him, but would ascertain his intention by ignoring them.

I record my dissent as to the award of income to the great-grandchildren; all other exceptions I would dismiss.

HENDERSON and VAN DUSEN, JJ., did not sit.