Estate of Martin Nixon, Deceased.

Argued December 9, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*C. J. Hepburn,* and with him *Thomas Hart,* for appellants.—The gift to the surviving issue of deceased children is a gift pur autre vie: Little's Appeal, 81 Pa. 190; Leech's Estate, 228 Pa. 311.

*Thomas Stokes,* and with him *James A. Montgomery, Jr.,* for appellee.—Testator's intention was to limit the gift of income to his grandchildren to the period of their respective lives, and was not to create a tenancy pur autre vie: Rowland's Estate, 151 Pa. 25; Royland's Estate, 141 Pa. 553; Huddy's Estate, 257 Pa. 528; Maxwell's Estate, 261 Pa. 140.

OPINION BY LINN, J., February 27, 1931:

The question is whether appellant's husband, who died before the termination of a testamentary trust created by his grandfather, was entitled to income for his own life, as the learned court below held, or pur autre vie, as appellant contends.

Martin Nixon died in 1888, leaving a will dated February 14, 1880, with a codicil dated March 12, 1884. He left surviving him four children: Martha B. Miller, M. Martine Nixon, Alice F. Nixon and George F. Nixon, and no issue of deceased children. By the third paragraph of his will, he gave his estate to trustees "to pay over and divide semi-annually the whole net income of my said estate, real and personal, to and equally among such of my children as may be living at the time of my decease and the lawful issue of such as may have died leaving issue them surviving, for and during the lives of my said children respectively; such issue of a deceased child, if more than one, taking among them their parents' share only.

"In case of the subsequent decease of any of my said children without leaving lawful issue them surviving, then the portion of income of such child shall be payable to the survivors or survivor of my children for life. In case of the subsequent decease of any of my said children, leaving lawful issue them surviving, then the portion of income payable to the parent of such issue prior to his or her decease, shall be paid to such issue in equal proportions, if there be more than one, for and during the lives of the survivors and survivor of my said children. And in case of the decease of all my children without lawful issue them surviving then my said estate, real and personal shall descend to and be vested in such person as by the laws of Pennsylvania is directed concerning the estate of intestates.

"Upon the decease of the survivor of my children this trust shall determine and my trustees and the survivor of them shall grant, pay, assign and distribute all my said estate, real and personal, to and among the lawful issue of my said children, in fee and absolutely, in equal shares, such issue and their descendants, if any, taking and receiving only such part or share thereof as his, her or their deceased parent would have been entitled to if then living.

"Further it is my will and I so direct and until the death of the survivor of my children, as aforesaid, the said shares of my children and grandchildren, shall in no case be subject to their debts, liabilities or engagements, nor, as respects any married daughter or granddaughter shall her share be subject to the control of her husband, but shall be for her sole and separate use and be payable to her only."

That provision was modified by the codicil as follows: "Whereas: by the Article numbered 'Third' of my said will it is among other things directed that in 'case of the subsequent decease of any of my said children without leaving lawful issue them surviving,

then the portion of income of such child shall be payable to the survivors or survivor of my children for life.' Now it is my intent and purpose that my children so dying without lawful issue then living as aforesaid, shall have the power of disposition by will; and I hereby empower any of my children so dying, as aforesaid, to limit and appoint the whole or any portion of the share or purpart of my estate which is represented by said child, to such person or persons and for such estates as he or she may direct by last will and testament executed in the presence of two or more credible witnesses. And thereupon I direct my Trustee to grant, assign and pay the corpus and principal of such share, real and personal, to the person to whom the same may have been limited and appointed as herein authorized, freed and discharged of any trust.''

Of his four children who survived, testator's son George F. Nixon died in 1900, unmarried and without issue, and having exercised the power of appointment. Testator's daughter Martha B. Miller died in 1925, leaving to survive two sons, Martin Nixon Miller and Charles Miller, 2nd. This grandson, Charles Miller, 2nd, died Aug. 1, 1929. In consequence of his death, this account of the substituted trustee of the testator's estate, was filed. As two of the testator's children survive, the trust has not ended; each of those two children now takes one-third of the income; the remaining one-third of the income, accrued to the date of the death of the grandson, Charles Miller, 2nd, is payable one-half to his personal representative, and one-half to the surviving grandson, Martin Nixon Miller.

The question for decision, as we have said, is who, since the death of Charles Miller, 2nd, is entitled to receive the share of the income in his lifetime paid to him? On the one hand, it is claimed by his surviving

brother; and, on the other, by appellant, as his personal representative, and also, as his widow.

The learned auditing judge was of opinion that the grandson, Charles Miller, 2nd, was entitled to receive income only during his life, and awarded the balance of the one-sixth share accrued since his death, to his brother Martin Nixon Miller. Exceptions filed on behalf of appellant, were dismissed, two of the judges of the learned court below, dissenting: see 13 D. & C. Rep. 487 for the opinions filed. These appeals followed.

In ascertaining the intention expressed by the testator, we shall first consider the will alone, and then, the will as affected by the codicil, for ''it is the established rule, I Jarman on Wills, 160, not to disturb the disposition of the will further than is absolutely necessary for the purpose of giving effect to the codicil;'' Baugh's Est, 288 Pa. 308, 312.

Testator's obvious intention was to benefit his own surviving children and their issue; he had children and grandchildren; it was uncertain who would survive him; he wished to treat his children alike; who would take must of necessity be ascertained in the future. To meet both contingencies, he dealt with surviving children and their children as in two classes; he did not devise and bequeath his property to either in the first instance; he directed that the trustees pay the income semi-annually to his surviving children for life; they constitute the first class; on the death of any child, leaving children, such grandchildren of the testator take the share of the income theretofore taken by the parent; testator's grandchildren constitute the second class; such grand child receives a share of the income for life, unless the trust terminates during its lifetime by the death of the last survivor of testator's children.

Such disposition of income may be aptly described by quoting from the opinion in Rowland's Estate 151

Pa. 25, 27, in which a similar subject was considered: "The first was a steadily diminishing class until the death of the last survivor should exhaust it altogether. The second was a steadily increasing class until at length it should become entitled to the whole estate. The distribution of the income annually [semi-annually at bar] as of the principal ultimately, was to be made per stirpes;" and here, as in Rowland's Estate (see p. 29) the effect of so classifying the beneficiaries is that ".......all the distributees take the same estate in the income, viz., a life-estate with remainder over to living issue, if any, and, in default of issue of such decedent, then over to surviving distributees per stirpes." Concerning gifts to a class, see Denlinger's Estate, 170 Pa. 104; Billings' Estate, 268 Pa. 67, 70.

At each income-paying period, it is the duty of the trustee to determine who is living to receive payment. All possible doubt about the intention to benefit only living children and living grandchildren is removed by the provision, quoted above, exempting the income from liability for debts. Testator, after creating the separate use trusts by adequate words, specifically requires the income to "be payable to her only." That provision cannot be satisfied by paying income accruing after a granddaughter's death to anyone, in her alleged right; the direction is unmistakable—to pay "to her only;" literal compliance with such direction is required. In Hays' Estate, 201 Pa. 391, income was given to daughters "for her sole and separate use, and shall be paid unto their own hands respectively upon their own sole and separate receipt therefor;" and of that provision, the court said, (p. 396) "the only sufficient reply to a demand of the cestui que trust upon the trustee for the income of the estate is payment to her and her receipt therefor." See also, Kunkel v. Kemper, 32 Pa. Superior Ct. 360, 364. Similar personal payment to grandsons is of course implied because testator makes no distinction

in the shares of granddaughters and grandsons. The words "b'e payable to her only" were not necessary to the creation of a separate use trust; such trust had been sufficiently created by the preceding words "but shall be for her sole and separate use:" Wilson v. Bryn Mawr Trust Co. 225, Pa. 139, 142. Such specific requirement of payment to the beneficiary only, was not contained in the spendthrift and separate use trusts considered in Leech's Estate 228 Pa. 311, and in Lafferty's Estate, 59 Pa. Superior Ct. 24, which are cited by appellants to minimize the general effect attributed by appellee to the exemption provisions in the will before us. As to the construction of the will, see also, Rowland's Estate, 141 Pa. 553; Huddy's Estate, 63 Pa. Superior Ct. 34 and 257 Pa. 528; Maxwell's Estate, 261 Pa. 140 and Kemble's Estate, 279 Pa. 368.

What change was made by the codicil? It conferred on children dying without issue, testamentary power of appointment of principal and income of the share "represented by said child." As testator declared that the trust shall terminate with the death of the last survivor of his children, all that the codicil did, was to empower a child, without surviving issue, to terminate the trust as to the share of principal and income "represented by said child;" it did not increase the interest or estate of any child; if the power were exercised by appointment to one outside, the share of income appointed and that share of the corpus would drop out of the trust; but, so long as there are living children and grandchildran of the testator, the two classes of beneficiaries, mentioned above, remain to receive payment of income of the corpus for the time being, precisely as declared in the original will. The codicil makes no change in the testator's intention to preserve for surviving children and their issue the shares of the estate by them represented un-

til the termination of the trust and division of the principal.

We agree with the learned auditing judge, who said: "......this case is controlled by Maxwell's Estate, [supra]. In that case the testator created a trust for the benefit of his wife for life and directed his trustees after her death, to hold said estate for the lifetime of his children and the survivor of them, and to pay out of the dividends realized therefrom $6000. per annum to his daughter for life, and the balance of said dividends, if any, to be divided equally among his other children, share and share alike, the issue of any deceased child to take its parent's share and upon the death of his daughter he directed his trustee to divide the entire dividends realized from his stock equally among his children, share and share alike, until the death of his last surviving child. The Supreme Court held, under the decisions in Rowland's Estate, 141 Pa. 553 and Huddy's Estate, 257 Pa. 528, that the testator intended the children and grandchildren to be the sole objects of his bounty and confirm the succession to the share of any dying without issue to the survivors to the exclusion of personal representatives. In so holding the Supreme Court further noted the fact that to hold otherwise, namely, that said interest vested in the personal representatives of the child dying would make the income accruing after the death of the said child a part of the estate of said child and liable for his or her debts, which the testator expressly forbade by directing that the share of each child or grandchild shall be free of liability for his or her debts. As this is the identical situation in this case, the auditing judge is of the opinion that Maxwell's Estate controls."

Appellant relies on Little's Appeal 81 Pa. 190 and cases following it; we think they are inapplicable for two reasons: the first, thus stated in Huddy's Appeal, supra, "All of the cases following Little's Ap-

peal are distinguished by the absence of any purpose of the testator to appropriate the estate exclusively to a class of the legatees......;'' the, second, because of the specific direction in the debt-exemption provision, requiring income for a granddaughter to be paid "to her only."

The decree in each appeal is affirmed.