## ESTATE OF P. S. ROWLAND, DECEASED.

### APPEAL BY RACHEL BOMEISLER FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued April 2, 1891—Decided April 13, 1891.
[To be reported.]

(*a*) A testator bequeathed and devised property to trustees, directing that certain sums be paid out of the income to certain of his children annually during life, the net balance of income to be divided annually, per stirpes, among his five living children, the issue of two deceased children, and the issue of any other of his children who might die leaving issue.

(*b*) Such distributions were directed to be made annually, until the death of the last survivor of the testator's children, when the principal was to be divided equally, per stirpes, among the issue then living of the seven children. After the property went into the hands of the trustees, a son of the testator died, leaving no issue surviving him:

1. The correct interpretation of the will is that the distributees of the income were to be ascertained at each annual distribution, by a formula which the testator provided, to wit, they should be the living children of the testator, and the living issue of deceased children, the latter to take in the right of the parent, or per stirpes.

Statement of Facts.

2. Each child, living at the death of the testator, took a vested interest in the income, but for his own life only, not for the life of the last survivor; wherefore, on the death of the son without issue, his share fell in, reducing the number of the distributees, and his administrator was not entitled to any income subsequently accruing.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 179 January Term 1891, Sup. Ct.; court below, No. 364 April Term 1888, O. C.

On April 28, 1890, the Fidelity Insurance, Trust & Safe Deposit Co., filed a second account as trustee under the will of Paltiall S. Rowland, deceased, exhibiting for distribution a balance of income in the hands of the accountant.

The account being called for audit, before ASHMAN, J., the following facts were found:

The testator died in 1887. By his will, dated January 10, 1885, he bequeathed and devised his residuary estate to his wife, Abigail Rowland, during her life, and after her death to his executors upon trusts, stated in the will as follows:

"In trust to keep invested all the personal estate, and collect and realize all the rents, issues and profits both of my real and personal estate, and to pay thereout to my daughter Delia above named the sum of two thousand five hundred dollars per annum during the whole term of her natural life; to my son Ephraim A. Rowland and to my son John J. Rowland each the sum of seven hundred dollars per annum during the whole term of the natural life of each; and the surplus of net income over and above what is requisite to pay said annual amounts of $2,500, $700 and $700, I direct to be annually divided equally, per stirpes and not per capita, between my five children Delia, John, Ephraim, Rachel and Esther, and the issue of Sarah and Fanny deceased, and the issue of any other of said children that may at any time have died leaving issue, until the death of the last survivor of said children and final distribution of my estate next hereinafter provided for; the principal of the said real and personal estate to be held until the death of every one of my children, and upon the death of the last survivor of them to be divided equally, per stirpes and not per capita, between the issue then living of my seven chil-

dren to wit: Delia R. Newhouse, Ephraim A. Rowland, John J. Rowland, Rachel Bomeisler, Esther Bomeisler, Sarah J. Hart and Fanny Tobiason."

Abigail Rowland, the testator's widow, died March 12, 1888. Delia R. Newhouse, Fannie Tobiason and Sarah J. Hart died in the lifetime of their father, the testator, leaving one, two, and four children, respectively. Prior to the filing of the first account of the trustee, two of the four children of Sarah J. Hart died, one of them leaving a husband and one child, and the other leaving one child.

On exceptions to the adjudication of said first account, it was held by the Orphans' Court, ASHMAN, J., delivering the opinion, that the effect of the testator's will was to give to the children, and issue of deceased children of the testator, living at his death, a vested interest in the income of the estate, from and after the death of the widow, to continue until the death of the last surviving child, the date of such death being the period fixed for the division of the principal; and, accordingly, proportionate shares of the income in the hands of the trustee, at the time of filing the first account, were awarded to the personal representatives of the deceased children of Sarah J. Hart, and not to their issue: Rowland's Est., 7 Pa. C. C. R. 327.

Between the filing of the first and second accounts, John J. Rowland, another of the testator's children died. Whether or not he left issue, was not stated in the adjudication, but it was stated by counsel, in appellant's paper-book, that he died without issue, leaving a will.

Following the decision made in the former adjudication, the auditing judge awarded to the administrator of the estate of John J. Rowland the share of the income, embraced in the present account, which would have been payable to him if living. Exceptions to the adjudication, filed by Rachel Bomeisler, were dismissed by the court, HANNA, P. J., and a decree entered confirming the adjudication absolutely. Whereupon the exceptant took this appeal, specifying that the court erred:

1. In dismissing appellant's exceptions.

2. In awarding to the administrator of John J. Rowland a share of the balance of income.

3. In not awarding the whole of the income to the surviving children of the testator, and the issue of non-surviving children.

Arguments.

*Mr. John G. Johnson*, for the appellant :

The testamentary directions, in question in this case, are so exceptional that it will avail little to quote decisions.   Whilst the law favors an early vesting, the canon of construction to this effect will not be permitted so to operate as to defeat an intent to the contrary, gathered from the will itself.

1. The testator did not mean that, in case of the death of a child, subsequent to his own death, leaving issue, the income should be paid to the personal representatives of such deceased child.   The limitation to " issue of any other of said children that may have died leaving issue," was not intended, as the court below held it to be, to refer to issue of children dying in his lifetime.   He directed an annual distribution of income amongst certain children, but provided that in case of the death " at any time " of any of such children, the share of such dead child should be paid to its issue.   No case can be found holding such a provision to be applicable only to children dying before the testator.   By plain testamentary direction, the beneficiaries of the principal are limited to the issue of deceased children ; and, inasmuch as the testator excluded the personal representatives of his children in its distribution, there is little ground upon which to rest an interpretation which, to the prejudice of children and their issue, will give to such personal representatives a share of the income until the arrival of the time fixed for distribution of the principal.

2. The intent of the testator was to make the five named children beneficiaries of the income only during life, with remainder to the issue of any child dying before the death of the last survivor leaving issue.   This interpretation is necessary, in order to make efficacious the direction in favor of " the issue of any other of said children that may at any time have died leaving issue."   Such direction, if the children took a vested interest in the income, would lead to the addition of a beneficiary each time a child dies leaving issue; for the personal representatives of the child would take the old share, and the issue would take a new one.   The true construction of the will is reached by inserting the words " such as shall be living of," making it read thus : " The net income . . . . . I direct to be annually divided . . . . . between (such as shall be living of) my five children . . . . . and the issue of Sarah

and Fanny, deceased, and the issue of any other of said children that may at any time have died leaving issue," etc. Such insertion permits a distribution to be made to the child, if alive, and if dead, to the issue, and excludes the anomaly of a division between children living, representatives of dead children, and issue of dead children.

3. When there is no gift independent of the direction to pay, it is necessary that the person to whom payment is to be made shall fill the description of the beneficiary be the time fixed for payment, unless the payment be deferred for some purpose other than that of ascertaining the beneficiary: 2 Wms. on Exrs., 1344; Reed's App., 118 Pa. 222; McClure's App., 72 Pa. 417. In this case, the only object of deferring payment of the principal was to provide, until the death of the last surviving child, for children and their issue. The testator meant that the beneficiaries should be determined at the arrival of each time fixed for the annual divisions. He knew that the beneficiaries would be different each time, depending upon the fact of death. He partly provided for this in express terms, and by implication did so entirely. Even if there had been an express and independent gift to the children, the direction to divide annually amongst persons answering the description at the time of the division, would still be most significant, as showing that it was not intended to vest in each of the children the right to take a share of the income until the death of the last surviving child, irrespective of the time of their death and whether they should leave issue or not.

*Mr. George P. Rich*, for the appellees:

1. If the words, " and the issue of any other of said children that may at any time have died leaving issue," were not in the will, there could be no doubt of the intention to confer upon living children, equally with the issue of the two dead children, vested interests in the income accruing up to the period of distribution of the principal. In this aspect the case would be far stronger than Little's App., 117 Pa. 14, wherein, under a will directing semi-annual payments of income to be made to a legatee and his heirs, it was held that the whole legacy vested in the legatee, and that, after his death, payment was to be made to his representatives. When the enjoyment of an

entire fund is given in fractional parts, at successive periods which must eventually arrive, the distinction between time annexed to payment, and time annexed to the gift, becomes unimportant: Little's App., supra. In the present instance, the times of payment were postponed manifestly for the mere convenience of the estate, in order to allow the annual income to be ascertained and collected.

2. The doubt in the case hinges on the meaning of the super-added words above quoted. Do they refer, as was held by the court below, to one class only, viz., the issue of children dying in the lifetime of the testator? Or do they include, as the appellant contends, an additional class, the issue of children dying after the testator, whereby the five living children, instead of taking, equally with the issue of the two dead children, vested interests in the income, are cut down to mere life-estates? If we adopt the first interpretation, we have a plain, simple and rational scheme of distribution, the interest in the income vesting at the testator's death in two then ascertained classes, viz., his living children and issue of his then dead children. They were the principal objects of his bounty, and his primary intention was to provide for them. When the intent is doubtful, the law leans in favor of absolute and vested, rather than defeasible or contingent estates; of the primary rather than the secondary intent; of the first taker as the principal object of the testator's bounty; and of a distribution as nearly conformed as possible to the general rules of inheritance: Smith's App., 23 Pa. 9; Fitzwater's App., 94 Pa. 141.

3. The construction contended for by appellant requires the insertion of words in the will. Words may, in some cases, be supplied to carry out a defectively expressed intent, but not to create another intent where one is definitely expressed. They can be supplied only when necessary to give effect to the most unquestionable purpose of the testator; and hence, if a doubt arises as to whether the change would advance the real intent of the testator, it cannot be made: Varner's App., 87 Pa. 422; McKeehan v. Wilson, 53 Pa. 74; and it will hardly be contended that there is no such doubt in the present case. Appellant's construction involves us in two very serious difficulties. The first of these is, as there is no limitation over in case of the death of the issue of his two deceased children, Sarah and

Fanny, such issue would take vested interests, whereas his living children would take but life-estates. However, he hardly could have intended to put the issue of Sarah and Fanny upon a better footing than the living children.

4. The second difficulty relates to the results which would follow from appellant's construction, upon the death of the first takers. If, on the death of any one of the five children, the share of the income passes to the issue, the question at once arises, does this mean issue living at the death of such child, or does it mean that the right shall pass to the issue next in descent, for life, successively ? The first view is perhaps the correct one, as in a bequest of personalty, issue means, primarily, issue living at the death of the person spoken of: Snyder's App., 95 Pa. 174. If we adopt it, then the alleged anomaly, suggested by appellant, would simply be removed from the present to the next generation, as, instead of the children, their issue would take vested interests which would pass to the personal representatives of the issue to the exclusion of their descendants. If the second view be adopted, we may have a series of holdings varying as greatly in the number of the beneficiaries as in the extent of their interests. We are not without authority that the limitation to issue must be understood as referring to the issue of children dying in the testator's lifetime: Schoonmaker v. Stockton, 37 Pa. 461; Shutt v. Rambo, 57 Pa. 149; McCullough v. Fenton, 65 Pa. 419; Hetrick v. Addams, 12 W. N. 367. And there is nothing in the will to warrant the conclusion that the testator meant the beneficiaries to be ascertained at the time of each annual division.

OPINION, MR. JUSTICE WILLIAMS:

Rowland, the testator, died in 1887. By the terms of his will he gave his entire estate, real and personal, to his wife for her life. Upon her death, the dwelling-house and household goods were to go to his daughter Delia during her life, but the rest of his estate he gave to the trustees upon the following trusts:

1. To invest the personal estate, and collect the income thereof, and to collect the rents, issues, and profits of his real estate.

2. To pay out of the income so provided the sum of two

thousand five hundred dollars per annum to Delia during her life, and the sum of seven hundred dollars each to his two sons, Ephraim and John, annually during their respective lives.

3. To divide annually the net balance of the income " equally, per stirpes and not per capita, between my five children, Delia, John, Ephraim, Rachel, and Esther, and the issue of Sarah and Fanny, deceased, and the issue of any other of the said children that may at any time have died leaving issue, until the death of the last survivor of said children, . . . . , the principal of said real and personal estate to be held until the death of every one of my children, and upon the death of the last survivor of them to be divided equally, per stirpes and not per capita, between the issue then living of my seven children."

If the testator had died immediately upon the execution of his will, there would have been seven distributees entitled to share in the division of the net income, if his wife's life-estate was not in the way, viz., five living children, and living issue representing two children then deceased. Delia died between the date of the will and the death of her father, leaving issue living. The distributees, if ascertained as of the time of the testator's death, would still have been seven, viz., four living children, and three not living, represented by living issue. In 1890, John died, leaving no issue, and the present controversy is over the destination of the share that would have been paid to him if living. The Orphans' Court held that he took a vested estate, not for his own life, but for the life of the last survivor of his brothers and sisters, and awarded his share to his personal representative. Is this a correct interpretation of the will?

An examination of the several provisions of the will shows that the intent which dominates the instrument is to preserve the entire estate for the grandchildren, and to make division among them per stirpes, on the death of the last surviving child. In the meantime he provides for his wife and children for their lives. Subject to the wife's life-estate and the yearly payments to Delia, Ephraim, and John, the trustees are to make an equal division of the net income, each year, among all the objects of the testator's bounty. These are to be ascertained at each annual distribution by a formula which the testator provides. The trustees are to have regard, in the first

place, to the five children named in the will as living; in the next place, to the two children named as deceased, and represented by living issue; then, last, to "any other of said children (living at date of will) that may at any time (before a given distribution) have died leaving issue." The distributees thus ascertained will consist of two classes, viz., living children of the testator, and living issue of deceased children taking in the right of the parent, or per stirpes.

At the death of the testator, the first of these classes was four in number; the other, three;—in all, seven. When John died leaving no issue, he fell out of the first class, and he was not represented in the second. His life-estate fell in, and the distributees were reduced in number to six. The distribution being made annually, per stirpes, whenever a stirps falls out the share falls in, and the number of distributees is diminished. This mode of distribution does not disturb the holding of the court below that each child living at the death of the testator took a vested interest in the income, but reduces his interest to an estate for his own life. This effectuates the purpose of the testator. It provides for his own children while they live, and it secures his estate to his grandchildren without loss, when the event upon which their right to take as absolute owners shall happen.

We do not find the question presented in this case to be squarely ruled by any of our own cases to which our attention has been called. It is another illustration of the maxim that every will must be construed in the light which its provisions throw upon the intention of the testator.

> The decree of the court below is reversed, and the record remitted, that distribution may be made in accordance with this opinion.