# Maxwell's Estate.

*Wills—Gifts to classes—Gift to children for life and their survivors—Remainder to grandchildren—Death of child without issue—Construction—Intention.*

A testator having eight children and owning certain stock bequeathed his residuary estate to trustees for the benefit of his wife for her life, and directed his trustees after her death, to hold said stock "for and during the lifetime of my children and the survivor of them and to pay out of the dividends realized therefrom the sum

of $600 per annum to my daughter......during her lifetime, and
the balance of said dividends, if any, to divide equally among my
other children, share and share alike, the issue of any deceased child
to take its parent's share. And upon the death of my said daugh-
ter......, I order my said trustees to divide the entire dividends
realized from my said stock equally among my children, share and
share alike until the death of my last surviving child. Upon the
death of my last surviving child, I order and direct my trustees or
their successors to sell my [said] stock......and divide the pro-
ceeds equally among my grandchildren per stirpes." After the
death of testator and his wife one of their children died intestate,
unmarried and without issue. *Held,* the testator intended the chil-
dren and grandchildren to be the sole objects of his bounty and to
confine the succession to the share of any dying without issue to the
survivors, to the exclusion of personal representatives.

Rowland's Est., 141 Pa. 553, followed.

Argued Jan. 22, 1918.   Appeal, No. 296, Jan. T., 1917,
by Charles T. Maxwell, from decree of Superior Court,
Oct. T., 1916, No. 281, affirming decrees of O. C. Phila-
delphia Co., July T., 1908, No. 254, and Oct. T., 1909, No.
368, dismissing exceptions to adjudication, in Estates of
John Maxwell and Elizabeth Maxwell, Deceased.   Be-
fore POTTER, STEWART, MOSCHZISKER, FRAZER and WAL-
LING, JJ.   Reversed.

Appeal from Superior Court.   Opinion by HEAD, J.,
67 Pa. Superior Ct. 63.

The opinion of the Supreme Court states the facts.

The Orphans' Court, in an opinion by LAMORELLE, J.,
dismissed exceptions to the adjudication of GEST, J.
The Superior Court affirmed the decree.   Charles T.
Maxwell appealed.

*Errors assigned* were in dismissing exceptions.

*Charles S. Wesley,* of *Tustin & Wesley,* with him *J. W.
McWilliams,* for appellant.

No paper book or appearance for appellee.

OPINION BY MR. JUSTICE POTTER, April 22, 1918:

We have here two appeals, involving the same question,

taken from decrees of the Superior Court, dismissing appeals to that court from the final decrees of the Orphans' Court of Philadelphia County, in the adjudication of the accounts of trustees under the will of Elizabeth Maxwell, deceased, and under the will of John Maxwell, deceased.

John Maxwell died July 28, 1907, leaving a will by which he gave his residuary estate to trustees, to pay the income thereof to his wife, Elizabeth Maxwell, for life, and provided as follows: "And from and immediately after the death of my said wife, Elizabeth Maxwell, I order and direct my trustees hereinafter named, to keep and hold all my stock in the Wilton Hygiene Underwear Knitting Company, for and during the lifetime of my children and the survivor of them and to pay out of the dividends realized therefrom, the sum of Six Hundred Dollars ($600.00) per annum to my daughter, Jessie May Maxwell, during her lifetime, and the balance of said dividends, if any, to divide equally among my other children, share and share alike, the issue of any deceased child to take its parent's share. And upon the death of my said daughter, Jessie May Maxwell, I order my said trustees to divide the entire dividends realized from my said stock equally among my children share and share alike until the death of my last surviving child. Upon the death of my last surviving child, I order and direct my trustees or their successors to sell my stock in the Wilton Hygiene Underwear Knitting Company, and divide the proceeds equally among my grandchildren per stirpes."

The testator left to survive him his widow and eight children and the child of a deceased son. The widow, Elizabeth Maxwell, died July 8, 1908, leaving a will containing the following provision: "I give and bequeath all the stock that I own in the Wilton Hygiene Underwear Knitting Company to my executors and trustees hereinafter named, to keep and to hold for and during the lifetime of my children, and the survivor of them and to divide equally among my said children, share and

share alike, the issue of any deceased child to take its parent's share, all dividends realized from said stock, and upon the death of my last surviving child, I order and direct my executors to sell my stock in the Wilton Hygiene Underwear Knitting Company and to divide the proceeds among my grandchildren per stirpes."

William G. Maxwell, one of the children of John and Elizabeth Maxwell, died May 15, 1915, intestate, unmarried and without issue. Thereafter the trustees under both wills filed accounts. Upon the audits, the question arose as to what disposition should be made of the share of the income which had been payable to William G. Maxwell, during his life, and which had accrued after his death. The auditing judge held that W. G. Maxwell had a vested estate in a one-ninth share of the income, accruing between the death of his mother and that of the last survivor of his brothers and sisters, and awarded the income already accrued since his death to his administrator. Exceptions to the adjudication were dismissed by the court in banc, and the finding of the auditing judge sustained. On appeal, the Superior Court affirmed the decrees of the Orphans' Court.

While there is no express gift over of any part of the income upon the death of one of testator's children before the arrival of the time fixed for final distribution of the principal, the will shows clearly an intention that the entire income shall be paid to testator's children and grandchildren, and to no other persons. It is to be divided equally "among my said children, share and share alike, the issue of any deceased child to take its parent's share." This language is very similar to that of the will construed in Rowland's Est., 141 Pa. 553, which was (p. 554) : "The surplus of net income......I direct to be annually divided equally, per stirpes and not per capita, between my five children [naming them] and the issue of [naming them] deceased, and the issue of any other of said children that may at any time have died leaving issue." In that case Mr. Justice WILLIAMS said

that the intention of the testator was to give the income of his estate to "two classes, viz: living children of the testator, and living issue of deceased children taking in the right of the parent, or per stirpes." This excluded children who were not living when the right to distribution of the income accrued. . Again in Rowland's Est., 151 Pa. 25, a later case involving the construction of the same will, the former ruling was followed and reaffirmed, the case being cited in the opinion (p. 27) as Bomeisler's App., 141 Pa. 553. Mr. Justice WILLIAMS said (p. 29) : "The objects of his [testator's] bounty are ranged in two classes; one of which, comprising his own children living at the time of the distribution, is a constantly decreasing class, upon the extinction of which, by the death of the last surviving child, the trust ends and the estate goes into final distribution. The other, comprising living issue of his deceased children, is a constantly increasing class which must finally include all the beneficiaries under the will, and to the members of which the estate is to go in fee simple. This being settled, and the division being made per stirpes, we think all the distributees take the same estate in the income, viz, a life estate with remainder over to living issue if any and in default of issue of such decedent then over to surviving distributees, per stirpes."

The latest case involving a similar question, is Huddy's Est., 257 Pa. 528, affirming the decision of the Superior Court at 63 Pa. Superior Ct. 34. There the trustee was directed, after the death of the life tenant, "to pay the said income in equal shares to her children, as above set forth and to the children of any of her said children who may be deceased, such children to take their parents' share, until the death of the last of my said nieces' children." It was held that the case was ruled by Rowland's Estate. In the opinion of the Superior Court (pp. 38-40) the resemblance between the two cases is pointed out at length, and in this court it was said per curiam (p. 534) : "The clearly expressed intention of the

testator confines the distribution of the income from the estate to the children of his deceased niece, Eliza M. Fagan, and their issue.   This was the correct conclusion of the Superior Court: Huddy's Est., 63 Pa. Superior Ct. 34.   Helen Fagan Moore, a grandniece, having died without issue, her interest in the income terminated with her death: Rowland's Est., 141 Pa. 553."

In the present case, both the Orphans' Court and the Superior Court followed the decision in Little's App., 81 Pa. 190, where Mr. Justice PAXSON said (p. 192) that the point in controversy, briefly stated, was this: "The testator gives the entire income from his estate, consisting wholly of personalty, during the life of his daughter Elizabeth, or while she shall remain single, to his two daughters, Mrs. Martha J. Little, and the said Elizabeth, the former to receive one-third and the latter two-thirds of the said income.   Mrs. Little is now deceased, leaving a husband and children; Elizabeth is still living and unmarried.   The principal is not to be distributed until after Elizabeth marries or dies.   In the meantime what is to become of the one-third of the income formerly paid to Mrs. Little?"   It was held that it was payable to the legal representatives of the deceased daughter, upon the ground that there was no gift over of the income on the death of Mrs. Little.   We are clear, however, that the conclusion there reached, is not a rule of law properly to be applied to the case in hand.   This case is to be governed by the principle set forth in Rowland's Estate, and as applied in Huddy's Estate, supra.   There is nothing in the wills now before us which indicates an intention to make any distinction between the children.   It clearly appears that the children who died leaving issue were to have but a life estate.   What is there in the wills to indicate that a child dying without issue, should have any greater or other interest in the income than a child dying and leaving issue?   Nothing that we can find; and yet such would be the effect of the decision by the Orphans' Court,

and its affirmance by the Superior Court. Then again, admittedly, under the language of the wills, the interest of the last survivor of the children is an estate for life only, as upon such death the estate is to be distributed among the grandchildren per stirpes. What is there in the wills to warrant the award of any greater or other estate to any of the children, than was bestowed upon the survivor of them? Technically, the gift was per autre vie; but to allow this consideration to determine the question in favor of vesting, in a child dying without issue, the share in the income to which it was entitled while living, would be to disappoint the intention and purpose of the testator and testatrix, to this extent, at least, that it would make the accumulation of interest on the share of one dying without issue a part of the estate of such a one, and, therefore, liable for his debts. In neither of the wills do we see that there was in contemplation any such result. It was evidently intended to confine to the survivors the succession to the share of any dying without issue. Only living children or their issue representing them could take. As WILLIAMS, J., said in Rowland's Estate, supra, the purpose was to deal with the beneficiaries in classes, and, upon the death of any one without issue, the class as to him failed, and his life estate fell in. Why should a mere fiction of the law be permitted to govern in such a case as this, when it is apparent that the testator intended her children and grandchildren to be the sole objects of her bounty? We adhere to the doctrine of the decision in Rowland's Estate.

The assignments of error in each of these appeals are sustained, the decrees of the Superior Court are reversed, as are also those of the Orphans' Court in each case; the costs of these appeals to be paid out of the respective funds for distribution. It is further ordered that the records be remitted for distribution in accordance with the view of the law as expressed in this opinion.