Nixon's Estate.

488

*Thomas Hart, C. J. Hepburn* and *Theodore F. Jenkins,* for exceptants.
*Ernest Scott* and *Thomas Stokes,* contra.

VAN DUSEN, J., April 15, 1930.—It seems to us that where there is a trust of income to continue for a period not altogether dependent on the lives of the recipients, and the income is to go meanwhile to a class, with the substitution of the issue of any member of the class who may die meanwhile, survivorship is to be implied within the class. Therefore, if one of the class dies

during the trust, the income he has been receiving does not go to his personal representatives *pur autre vie* but to the others. This is the effect of the latest decision of Maxwell's Estate, 261 Pa. 140. We believe it is a rule which best represents what the testator would have said if he had expressed himself fully.

The opposite conclusion, arrived at in Little's Appeal, 81 Pa. 190, and many cases following it, is, we think, well explained in our case of Megargee's Estate, 10 D. & C. 595: "In each of the foregoing cases an examination discloses the gift of income to individuals, either by name or designation, with no gift over to any *class* as such."

The spendthrift trust provision characterizes the gift as one personal to the legatee and makes it still more probable that the testator did not intend the interest of the legatee to continue after death, though we cannot say that it is controlling.

It is argued that the opinion in Maxwell's Estate gives a pretty nearly conclusive effect to a spendthrift trust provision. As the will in that case did not contain such a provision, we do not believe the opinion is to be read in that sense. Nevertheless, this feature is now actually present in this will and it is entitled to consideration.

The exceptions are dismissed and the adjudication is confirmed absolutely.

STEARNE, J., dissenting.—This case relates to estates *pur autre vie* in income. Little's Appeal, 81 Pa. 190, is the leading case which defines and establishes the existence of such an estate. Rowland's Estate, 141 Pa. 553, is the leading authority for the doctrine that, despite the precise literal meaning of words creating a legal estate *pur autre vie*, nevertheless, the duration of the estate is a question of intention, to be determined from the general scheme of the will in its entirety. Many cases follow Little's Appeal, while those adhering to Rowland's Estate are numerous. In Megargee's Estate, 10 D. & C. 595, we endeavored to review and classify the decisions. As we pointed out in Megargee's Estate, page 601: "The test as to whether any given case falls under Little's Appeal, or under Rowland's Estate, is found in the case of Huddy's Estate, 257 Pa. 528. This decision affirmed the judgment of the Superior Court, where the opinion was delivered by Mr. Justice Kephart, who said, on page 533: 'All of the cases following Little's Appeal are distinguished by the absence of any purpose of the testator to appropriate the estate exclusively to a *class* of legatees,' and cites Rowland's Estate and Babcock's Estate as illustrations of this latter principle."

Again, we said on page 601: "Another class of cases follows Little's Appeal. In these cases income is given to children for their respective lives, and upon death of a child during continuation of the trust, the testator directs the income of the deceased child's share to be paid to such deceased child's children or issue. See Leech's Estate, 228 Pa. 311; Dillin's Estate, 47 Pa. Superior Ct. 158; Lafferty's Estate, 59 Pa. Superior Ct. 24."

The latter situation is precisely the instant case. It is a gift of income to children for their respective lives, with provision upon the death of a child during the continuation of the trust that the income of such deceased child's share is to be paid to the issue of such deceased child "for and during the lives of the survivors or survivor of my said children."

I can discover no intent of this testator, considering the will as a whole, to appropriate the estate exclusively to a *class* of legatees. Obviously, the testator was not dealing with beneficiaries *in classes*, and contemplating that upon the death of any one of the class, without issue, the class as to him

would fail and consequently the life estate would fall in. There is no opening and closing of classes apparent under the language of the will. Quite to the contrary, all the testator indicates is that he desires his children to share equally his income until the death of the survivor. When a child dies, leaving issue, the issue is given the income theretofore enjoyed by the parent. If there is no issue surviving such deceased child, the child is given an unrestricted or general power of appointment, not only as respects the income, but extending to the share of principal as well. It is hard for me to conceive how there could be any plainer vesting of this income in decedent's children and their issue for the life of the survivor of the children. The situation is specifically ruled by Leech's Estate, 228 Pa. 311; Dillin's Estate, 47 Pa. Superior Ct. 158; Lafferty's Estate, 59 Pa. Superior Ct. 24. It is a vested estate in income *pur autre vie*.

The Auditing Judge conceded that an estate *pur autre vie* had been created, but decided that the existence of a spendthrift clause in the will prevented the estate from vesting. He ruled, *"while the interest of [the deceased grandchild] appears in other respects to be an estate pur autre vie, his interest cannot be held to vest in him if by so vesting the spendthrift trust is defeated."* It is with this ruling that I disagree.

To be sure, the presence of a spendthrift clause *may*, in certain cases, be an important element in ascertaining testamentary intent. I do not understand, however, that its existence is a *conclusive* indication of intention against a vesting of a legal estate *pur autre vie*.

President Judge Rice had precisely this question under consideration in Lafferty's Estate, 59 Pa. Superior Ct. 24. He said, page 38: "The spendthrift trust clauses of the will, to which counsel for appellants make elaborate reference in their learned and able argument, are to be considered in arriving at the testator's intention, but they do not necessarily compel the conclusion that his intention could not have been that, upon the death of one of his children, leaving issue, without having exercised the power of appointment, the share of that child should vest in his children. If this was the actual, personal, and individual intent of the testator, as ascertained by consideration of the particular words of the 8th section and the general scheme of the will, it ought to control, and the provisions as to liability for contracts and debts, and exemption from execution and attachment, be restrained accordingly. In that view, neither the letter nor the true intent of these provisions was violated by giving effect to the disposition which Francis P. Lafferty made of his vested interest in the income by his will."

The Auditing Judge and the majority rely upon Maxwell's Estate, 261 Pa. 140, where Mr. Justice Potter said (page 146), referring to the effect of holding the interest to be vested *pur autre vie*: *". . . it would make the accumulation of interest on the share of one dying without issue a part of the estate of such a one, and, therefore, liable for his debts."* I cannot agree that such language should be taken to establish the doctrine attributed to it by the Auditing Judge. In the first place, my examination of the record in Maxwell's Estate reveals that neither will contained a spendthrift clause. It would extend unduly an already lengthy opinion to discuss the facts in Maxwell's Estate. It will suffice to say that Maxwell's Estate, following explicitly Rowland's Estate, *supra*, is a typical case of a devise to beneficiaries in *classes*, and, of course, when one in the class died without issue, the class as to him failed, and his life estate fell in. As Mr. Justice Potter said, page 146: *". . . it is apparent that the testator intended her children and grandchildren to be the sole objects of her bounty. . . ."*

It is true that in Huddy's Estate, 63 Pa. Superior Ct. 34, very careful attention was given to the spendthrift provision in the will, but, as pointed out by Mr. Justice Kephart (page 39), it was the intention of the testator to preserve the estate *exclusively* for the niece, her children and grandchildren. The spendthrift clause was another demonstration of the existence of this intention.

In the present case testator did not intend his children and grandchildren to be the sole objects of *his* bounty, because he specifically provided that where a child died without issue, such child could generally appoint. There is, therefore, no intention to preserve the estate exclusively for the blood of the testator. While a child lives he enjoys his share of the income; when he dies his issue takes, if he leaves any, and if not, then it passes according to the will of such child. Clearly, the estate is a vested one *pur autre vie* in the issue of a deceased child.

I would sustain the exceptions and award the share of income heretofore paid to Charles Miller, 2nd, to his personal representatives to be distributed according to the terms of his will.

LAMORELLE, P. J., joins in this dissent.