## McCabe Estate

*Leslie J. Carson, Jr.*, of *Saul, Ewing, Remick & Saul*, for exceptants.

*Minturn T. Wright, 3rd*, contra.

SAYLOR, J., March 12, 1965.—For determination is the problem of awarding income from a trust estate to the estate of a deceased life tenant who was a grandniece of the testator, or to her surviving children, or to members of the class of the testator's grandnephews and grandnieces. The questions to be answered are:

1. Whether when the testator said "children" he meant "issue" so as to include grandchildren, and

2. Whether the deceased grandniece had a vested interest in the share of income for life, which was not divested upon her death.

The learned auditing judge determined that "children" did not mean grandchildren and awarded the income to the class of the then surviving grandnephews and grandnieces, and not to the children or the estate of the deceased grandniece.

In the twenty-first paragraph of his will, testator, a bachelor without lineal descendants, provided that his residuary estate be held in trust to pay the income "equally among all of my nieces and nephews who are living at the date of this will, per capita . . . for and during the term of their natural lives, respectively, and upon the decease of any nephew or niece, or if any of them shall die in my lifetime, to pay and distribute his or her share of such net income among his or her children equally. . . . and if any nephew or niece of mine shall die before or after me and leave no child or children him or her surviving, the share of income of such deceased nephew or niece shall be added to the income of the other living distributees."

It is further provided that upon the decease of all of testator's nephews and nieces the trust ends and the principal is to be distributed to his heirs then living according to the intestate laws.

Decedent died November 19, 1926. He was survived by 43 nephews and nieces, of whom 23 presently survive. The account was before the court because of the

death on June 2, 1963, of Rita G. Murray Nash, the only child of testator's niece, Mary B. Murray, who died in 1935. Rita is survived by four living children. The accountant and the guardian ad litem for minor interests took the position that Rita's share of the income upon her death became part of the general income payable to all living distributees. The award was so made. The personal representatives of the deceased Rita and her children filed exceptions.

The will does not expressly state what happens to the share of income paid to a child of a niece or nephew upon such child's death. There were four alternatives originally considered by the parties. The first was intestacy as to that share. This alternative should not be adopted because an intestacy should be avoided as a general rule.

The second alternative is payment to the estate of the deceased niece as her interest in income was vested. This alternative is not accepted because it is agreed that the gift of the testator is a class gift. When a member of a class dies during the term of a trust his or her interest passes to the other members of the class and not to the deceased life tenant's estate: Maxwell's Estate, 261 Pa. 140 (1918) ; Huddy's Estate, 257 Pa. 528 (1917) ; both cited and followed in Nixon's Estate, 306 Pa. 261 (1932). See also Wood's Estate, 321 Pa. 497 (1936), where also it was so held. There the court said that another factor in reaching its conclusion was the prohibition against anticipation and attachment for debt. In the instant case the twenty-second paragraph of the will contains a spendthrift clause.

The third alternative is payment to the children of the deceased grandniece Rita. The exceptants contend that by "children" testator meant "issue," and hence "grandchildren" are included as income beneficiaries. It is argued that where the testator's apparent intention as disclosed by his will is to provide for children

of a deceased child the rule that "children" does not include grandchildren does not apply. This assumes that testator's language is ambiguous and that his intention was other than his language discloses. It will be seen that this is not so.

In general a class gift to "children" means only the children of the person named, not grandchildren or issue more remote. The rule stated in Hallowell v. Phipps, 2 Wharton 375 (1837), is still the law. There, where lineal descendants were concerned, the court said, page 379:

"The word 'children' does not ordinarily, and properly speaking, comprehend grandchildren or issue generally. Their being included in that term, is only permitted in two cases, viz., from necessity . . . and where the testator has clearly shown by other words that he did not intend to use the term 'children', in the proper actual meaning, but in a more extensive sense."

The exceptants cite several cases in support of their contention without distinguishing lineal from collateral heirs. In Rowland's Estate, 151 Pa. 25 (1892), again lineal descendants were the beneficiaries and the issue of a deceased child was declared to be entitled to income rather than the estate of such child.

A case quite similar to the one now considered is Wood's Estate, 321 Pa. 497 (1936), where testator established a trust for his brother Edward and Edward's four children. After the death of the brother and two of his children, the court awarded to two surviving sisters, nieces of the testator, the shares of income theretofore paid to the two nephews instead of awarding them to their estates or to their issue individually. The Supreme Court reversed this court and reinstated the awards of an auditor who had so recommended. The language of Mr. Justice Drew's opinion is completely apposite here. At page 500 he said:

"In a gift of income to a class, where a member of

the class dies without issue before the time for principal distribution the share of that member falls in and, in the absence of a contrary intent, increases the shares of the surviving members of the class, who therefore take in preference to the personal representatives of the deceased member."

Citing Huddy's Estate, supra; Maxwell's Estate, supra, and Nixon's Estate, supra, etc.

In Wood's Estate, supra, as here there was no indication that the testator intended that distributees should upon their death be represented by living issue. There as here testator's nephews and nieces were the main objects of his bounty and upon the death of any of them their children were designated as secondary beneficiaries.

Here there was no scheme of stirpital distribution envisioned or established by the testator. He directed a per capita distribution among all of his nephews and nieces living at the time he executed his will. Their shares in turn go to their children and upon the termination of the trust on the death of the last survivor of the nephews and nieces the entire principal is to be distributed to testator's then living heirs according to the intestate laws.

It can not be successfully argued that testator, whose will was obviously drawn by a competent attorney, intended the word "children" to mean not only the immediate offspring of his nephews and nieces but as well the children of such offspring, that is, the grandchildren of the nephews and nieces. That testator, and the scrivener of his will, knew how to designate members of the third generation after that of testator is evidence that when he did not give such designation he did not intend it to be inferred.

In the nineteenth paragraph of his will testator established a trust of $10,000 for the two children of his deceased niece, Mrs. Frank Hughes, they to receive

the income therefrom for life and upon the death of either the share of income he or she had been receiving was to be paid out for the support and education of his or her children until maturity at which time the principal was distributable to them. Failing such grandnieces and grandnephews, the principal was to go into the residuary estate.

The primary life tenants were designated as the "two children" of Mrs. Hughes. By no possibility could the word grandchildren be read into that instance of the use of the word "children." Hence, having clearly used that word once without any possible ambiguity, how could ambiguity be imported into the second instance of the word's use in the twenty-first paragraph of the will?

There is no need to invoke any presumption to support the statement that the word "children" as used by testator means that and that only. It of necessity limits issue to one generation. The word grandchildren or the phrase "children of their children" would have to be employed to include members of a later generation.

The exceptants contend that the use of the language of the nineteenth paragraph evidences a desire of the testator to have income from the $10,000 trust paid to minor grandchildren of the niece, Mrs. Hughes, and, that being so, it would be unlikely that he intended to treat the grandchildren of his other nephews and nieces less generously. On the contrary, the fact that testator created a separate trust for Mrs. Hughes's two children and did not require that the mother survive him is evidence (1) that he wanted to treat them more generously than the children of other nephews and nieces, and (2) that had he desired to make the same provision for the grandchildren of those nephews and nieces that he had made for the grandchildren of Mrs. Hughes he knew how to do it. He failed to do it. And so it can not reasonably be concluded from the

language of the twenty-first paragraph that there was an oversight in his not directing that income be paid to grandchildren of his nephews and nieces.

Testator's language as here interpreted does not work a hardship on anyone. It does not cause any discrimination between members of any generation. It applies equally to all grandchildren of any deceased nephew or niece of testator, whether a grandchild had or had not in his generation an aunt or uncle. In other words, the fact that Rita Nash had no brothers or sisters to benefit from her share on her death while some children of her aunts or uncles did have, does not create any distinction between her issue and the issue of such children.

The exceptants' cited cases are not apposite to the situation present here. In Carnegie Estate, 18 D. & C. 2d 629, affirmed per curiam 397 Pa. 308 (1959), there was a family distribution among lineal descendants, and there, in order to avoid excluding some of them from forever sharing in the estate, the word "children" was interpreted to mean "issue" in order to keep the income in the family. There would have been hardship had the court not so ruled. Where there is a family distribution among lineal descendants it may well be proper to interpret "children" as including grandchildren.

In Clark Estate, 359 Pa. 411 (1948), followed in Carnegie Estate, the court said, at page 420:

"It is a well-recognized canon that where language is equivocal a construction enuring to the benefit of remote lineal descendants is preferred to one which favors immediate issue exclusively."

Here the question is who within the family is to receive the income. There is no occasion to exclude anyone who is not in the family. There is need to distribute the income to those *in* the family whom testator has designated as participants in the income.

504

There is also the need to observe the apparent distinction between lineal and collateral heirs in solving a problem such as that presently before the court. While in Campbell's Estate, 202 Pa. 459 (1902), the word "children" was interpreted to include grandchildren under the specific facts of that case, the significance of the decision was minimized in Page's Estate, 227 Pa. 288 (1910), where the court stated, at page 289, that the earlier decision "was not intended to change the well-settled principle of interpretation that in the absence of evidence of a contrary intention afforded by the will itself a gift to 'children' will not be understood as including any more remote class of descendants."

Furthermore in Williamson Estate, 82 Pa. Superior Ct. 444 (1923), per curiam, the decision of the late Judge Gest of this court was affirmed. Judge Gest's opinion, page 446, reads:

"In Campbell's Est., 202 Pa. 459, a broader interpretation was given to the word 'children' as the Supreme Court held that the will sufficiently disclosed the manifest intent of the testator. This case was explained in Page's Est., 227 Pa. 288, as not intended to infringe upon the general rule; *and it may be noted that the bequest in Campbell's Estate was to lineal descendants of the testator, and not to collaterals as in Page's Est. . . . .*" (Italics supplied.)

In Gross Estate, 3 Fiduc. Rep. 94 (1952), where "children" was interpreted to mean "issue," the late Judge Hunter of this court emphasized the distinction between lineal and collateral descendants, at page 97, and referred to the distinction made by Judge Gest in Williamson Estate, supra.

It is clear that the third alternative is not acceptable.

That leaves only the fourth alternative, that which was adopted by the auditing judge, namely, the award

of income to the surviving members of the class to which Rita belonged, she having no brothers or sisters; that is, there being no child of her parent, a niece of testator, surviving her.

There is precedent for the award in this estate. In his adjudication of the pending account, Judge Lefever referred to a prior adjudication wherein Judge Shoyer distributed to three surviving children of a deceased niece the share of the income previously received by her and denied participation in that income to a grandchild whose parent had predeceased her. Exceptants state that at that time those who contended that "children" included "issue" abandoned that position and cited no cases to support it. While Judge Shoyer's adjudication is not res judicata here, its language nevertheless was properly quoted by Judge Lefever, as showing his colleague's interpretation of the word "children" as not including grandchildren.

The children of Rita occupy exactly the same relationship to testator as does the grandchild to whom Judge Shoyer denied distribution as not being a child of a deceased nephew or niece of the testator. We fail to see why any distinction should be drawn between the two situations merely because in the latter case the grandchild's parent predeceased the niece while in the present instance Rita Nash, the mother of the four claimants who are the exceptants, survived the parent, testator's niece. Nor can the fact that in the matter before Judge Shoyer there were surviving children of the deceased niece, while here there was but one child of the deceased niece, namely Rita Nash, make any difference at all to the conclusion that must logically be reached, which is that a grandchild of a nephew or niece of the testator under the terms of the will is not entitled to receive income whether or not such grandchild had in the prior generation any aunts or uncles. The award was properly made.

Accordingly, the exceptions are dismissed, and the adjudication is confirmed absolutely.