## Carter Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*James R. Ledwith, Paul Maloney* and *Pepper, Hamilton & Scheetz,* for exceptant.

*Peter M. Mattoon* and *Ballard, Spahr, Andrews & Ingersoll, William H. Lathrop* and *Montgomery, Mc-Cracken, Walker & Rhoads* and *John L. Harrison,* contra.

SHOYER, J., March 29, 1968.—The death without issue of testator's grandson, Alfred V. Leaman, 3rd, on February 9, 1966, poses questions as to distribution of future *income* as well as *principal.* Judge Saylor in his adjudication held that Alfred's right to income ceased with his death. In disposing of the issue as to principal, which was presented to the court by petition for declaratory judgment and answer thereto, Judge

Saylor also ruled that Alfred's estate (or stirps) had no interest in the principal which was contingent on survival of Alfred (or his issue) until termination of the trust.

Henry L. Carter, testator, died July 16, 1907, leaving a will dated August 28, 1903. After giving his wife, Julia, all his household goods, jewelry, life insurances, etc., he placed the residue of his estate in trust for the benefit of Julia and his remaining children. The widow was given a life estate in one-third of the income, and his son, Israel, an annuity of $1,000. The balance of income was to be shared equally by his remaining children and their issue on a stirpital basis "until the death of my last surviving child", excepting Israel. On the deaths, respectively, of the widow and Israel, their interests were to be held, or distributed, as part of the residuary estate. At termination, the will provides for distribution "per stirpes and not per capita". Julia, Israel and the other children, who were six in number and unnamed in the will, survived testator. Julia and six of the children are now deceased. Only one child, Carroll H. Carter, is still living, and he has no issue. Three of the children are survived by issue, some of whom have joined in opposing the claim of Alfred's personal representative. The trust continues until the death of testator's last surviving child, Carroll H. Carter.

In deciding the question as to distribution of principal while the trust continues, the opinion judge conceded that ordinarily this question will not be considered until the trust terminates and the time for distribution has arrived. See Quigley's Estate, 329 Pa. 281. The instant case calls for a decision at this time, because if the Commissioner of Internal Revenue of the United States should determine that the estate of Alfred V. Leaman, 3rd, has a vested interest in the remainder to the extent of one-fourth of

the principal of the trust under the will of Henry L. Carter, his grandfather, then Alfred's estate would be required to pay a substantially higher Federal estate tax than it would if no such remainder interest were found to exist.

Pursuant to the procedure authorized by Act of August 13, 1963, P. L. 670, 20 PS §2080.707, adding section 707 to the Orphans' Court Act of August 10, 1951, P. L. 1163, a citation issued upon petition of counsel for Alfred's estate to join the United States as a party in the accounting and declaratory judgment proceedings. See Brinton Estate, 36 D. & C. 2d 679, 15 Fiduc. Rep. 244, where this new procedural legislation was invoked. The Joint State Government Commission sponsored this amendment for the express purpose of allowing tax authorities to participate in proceedings dealing with property rights which may have tax consequences.

Hon. Drew J. T. O'Keefe, United States Attorney for the Eastern District of Pennsylvania, advised the court, by letter addressed to Paul Maloney, Esq., counsel for petitioner, that "it has been determined that the United States should not intervene in this matter or participate in any way in the litigation involving this estate". Thereafter, the audit of the account and hearing on the petition for declaratory judgment were held jointly, at which time the United States was not officially represented.

By Act of July 25, 1963, P. L. 305, sections 6 and 11 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §§836, 841, were amended to read:

"Section 6. Discretionary.—Relief by declaratory judgment or decree may be granted in all civil cases where . . . in any such case the court is satisfied that a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and . . .

that there is an uncertainty with respect to the effect of such asserted relation, status, right, or privilege upon the determination of any tax imposed or to be imposed by any taxing authority, including the United States . . . and the court is satisfied also that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding".

"Section 11. Parties.—. . . In any proceeding which involves the effect of any asserted legal relation, status, right, or privilege upon the determination of any tax, the appropriate taxing authority shall be served with a copy of the proceeding, but if such taxing authority does not enter its appearance, the requirements of this section shall nevertheless be satisfied if the court considers that the interests of the taxing authority are adequately represented".

It seems abundantly clear that the purpose of the above-quoted amendments which were enacted concurrently with the addition of section 707, supra, is to cover the precise situation in which the Leaman Estate finds itself: Johnson Estate, 403 Pa. 476; Purnell Estate, 424 Pa. 263. All parties in interest who are sui juris have been joined: Mohney Estate, 416 Pa. 107, 110. The guardian and trustee represents the interests of minors and unborn or unascertained persons. The United States has not appeared. The Leaman Estate has a very real interest in the outcome of this litigation, even though our decision as to their State property rights may not be accepted as controlling by the Commissioner of Internal Revenue. See Commissioner of Internal Revenue v. Bosch, 387 U. S. 456. Counsel for Alfred's Estate have prosecuted their claim most vigorously. They have filed a complete and exhaustive brief which thoroughly analyzes the will and all pertinent Pennsylvania authorities. They have argued their case with great skill and this

court is well satisfied that "the interests of the taxing authority are adequately represented". We hold, therefore, that the question of the interest of the Estate of Alfred V. Leaman, 3rd, deceased, in the principal of the trust under the will of Henry L. Carter is a proper question for a declaratory judgment proceeding.

The present controversy involves item "Fourth" of Henry L. Carter's will, wherein he gave the residue of his estate to trustees to pay the income to his wife and children until the death of his last surviving child. Omitting all reference to Julia and Israel, the trust provision reads as follows:

". . . the residue of the said two-thirds of such income to pay over in equal shares among my remaining children and the issue of such of them as may be deceased, the issue of a deceased child to take the share of income his, her or their parent would have taken if living, until the death of my last surviving child . . .

"In case any of my said children die without issue prior to the death of my said last surviving child, then I direct the income to which the child so dying would have been entitled if living shall be divided equally among my remaining children . . . and the issue of such of them as may be deceased, such issue taking the share of their deceased parent . . .

"Upon the death of my said last surviving child . . . I direct that the principal of my estate upon which my said children and their issue shall have been receiving income shall be divided into as many equal shares as I shall have children leaving lineal descendants them surviving, when each such equal share shall be paid over to my said grandchildren absolutely; they taking per stirpes and not per capita". (Paragraphs ours.)

As stated above, one child, Carroll, survives, so the trust continues. Since testator failed to provide expressly for the event which has occurred, viz., death of

his daughter, Dorothy C. Leaman, in 1932, followed by the death of her only child, Alfred, in 1966 without issue, we are required to construe the above language to determine if Alfred's right to income was vested pur autre vie.

In construing this will, it is the duty of the court to search for the intent of testator.

"The pertinent principles of law governing the interpretation of a will are well and clearly settled. In Burleigh Estate, 405 Pa. 373, 175 A. 2d 838, the Court said (page 376) :

" 'It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: [citing cases] ' ": Lewis Estate, 407 Pa. 518, 520.

In the first place, it is clear that the gift of income "in equal shares among my remaining children . . . until the death of my last surviving child" is a gift to a class.

"A bequest to a number of persons not named, but answering a general description, is a gift to them as a class, where a contrary intention does not appear from the will: [citing cases] ": Wood's Estate, 321 Pa. 497, 500.

Designation of the group as "my children", with express provision for defeasibility of their interest upon death with or without issue prior to the time for distribution (viz., "death of my last surviving child"), is an indication of testator's group-minded-

ness, and that he was thinking of his children (Israel excepted) as a class and not as individuals. See Restatement, Property, Chapter 22, Introductory Note.

· "In a gift of income to a class, where a member of the class dies without issue before the time for principal distribution, the share of that member falls in and, in the absence of a contrary intent, increases the shares of the surviving members of the class, who therefore take in preference to the personal representatives of the deceased member: Rowland's Est., 141 Pa. 553. . . . The interest is thus one for life, with remainder to the surviving members of the class, where no different intent appears. . . In a gift of income, distributees are to be ascertained at each periodic distribution by the formula provided by testator: Rowland's Est., supra; Rowland's Est., 151 Pa. 25. This is necessarily true even though testator does not specifically direct a periodic payment; for, from the nature of a gift of income, there must be periodic distribution, whether annually, semiannually, or otherwise, and the distributees must be determined anew at each such period. It follows that, where income is given to a class, the distributees entitled to take at any period of distribution are the members of the class who are alive at that time, or, where representation by issue is provided, the living issue of deceased members. 'At each income-paying period, it is the duty of the trustee to determine who is living to receive payment': Nixon's Est., supra, page 266. Where testator has provided a scheme of representation of deceased distributees by their living issue, or has otherwise indicated an intent that the distribution be stirpital, the interest of each member of the class becomes a 'life-estate with remainder over to living issue if any and in default of issue of such decedent then over to surviving distributees, per stirpes': Row-

land's Est. 151 Pa. 25, pages 29-30 . . .": Wood's Estate, supra, 500-01.

Rowland's Estate, 141 Pa. 553, and 151 Pa. 25, which was relied on so strongly by our Supreme Court in Wood's Estate is "strikingly similar to the instant case" in the words of our colleague, Judge Saylor. The first Rowland opinion, Bomeisler's Appeal, dealt with distribution of income upon the death of one of testator's children without issue. The second appeal decided that the share of income payable on testator's death to living issue of his daughter, Sarah, who predeceased testator, leaving a grandchild, Isabel, should continue after Isabel's death to her only child, Jonas.

Mr. Justice Williams, writing for a unanimous Supreme Court, said (141 Pa., at pages 560-61) :

"An examination of the several provisions of the will shows that the intent which dominates the instrument is to preserve the entire estate for the grandchildren, and to make division among them per stirpes, on the death of the last surviving child. In the meantime he provides for his wife and children for their lives . . . the trustees are to make an equal division of the net income, each year, among all the objects of the testator's bounty. These are to be ascertained at each annual distribution by a formula which the testator provides. The trustees are to have regard, in the first place, to the five children named in the will as living; in the next place, to the two children named as deceased, and represented by living issue; then, last, to 'any other of said children (living at date of will) that may at any time (before a given distribution) have died leaving issue.' The distributees thus ascertained will consist of two classes, viz., *living* children of the testator, and *living issue* of deceased children taking in the right of the parent, or per stirpes.

"At the death of the testator, the first of these classes was four in number; the other, three;—in all,

seven. When John died leaving no issue, he fell out of the first class, and he was not represented in the second. His life-estate fell in, and the distributees were reduced in number to six. The distribution being made annually, per stirpes, whenever a stirps falls out the share falls in, and the number of distributees is diminished. This mode of distribution does not disturb the holding of the court below that each child living at the death of the testator took a vested interest in the income, but reduces his interest to an estate for *his own life*. This effectuates the purpose of the testator. It provides for *his own children* while they live, and it secures his estate to *his grandchildren* without loss, when the event upon which their right to take as absolute owners shall happen". (Italics supplied.)

In his second opinion, 151 Pa. at page 29, Mr. Justice Williams continued: "The direction is that each share shall go to those entitled as the representatives of a deceased child 'not per capita, but per stirpes,' thus providing the same scheme of distribution for the issue of Sarah and Fanny as for the issue of all the children living at the testator's death who might thereafter die leaving issue. The *issue* of all his children were thus put into *one* class, with the same estates and subject to the same limitations". (Italics supplied.)

Whereas the Rowland will did not expressly terminate a life estate upon death of a life beneficiary without issue, and it was so decided only by construction, in the instant will we read: "In case any of my said children die without issue prior to the death of my said last surviving child then I direct the income to which the child so dying would have been entitled if living shall be divided equally among my remaining children (excepting my said son Israel Day Carter) and the issue of such of them as may be deceased such issue taking the share of their deceased parent". Tes-

tator thus fixed specifically the time to which any and all issue must survive in order to take, and has effectively dispelled any thought that he contemplated personal representatives of deceased issue taking along with living children and living issue.

Our Superior Court, in Nixon's Estate, 101 Pa. Superior Ct. 152 (1930), affirmed per curiam 306 Pa. 261, faced an issue analogous to the present. Judge (later Mr. Justice) Linn followed the rule of two classes among testator's children and their issue which was established in Rowland, and held that upon the death of a grandchild without issue, his share of the income went to his surviving brother and not to his personal representative. Counsel for the Leaman interests vigorously insists that Nixon is inapposite, because income of the deceased grandson was there held distributable to his brother, rather than to *all* the survivors in the group which included two aunts, i.e., members of the first class. He contends that there is no provision for a share crossing back to the first class of survivors, viz., to Carroll H. Carter, once it has descended from the *first* to the *second* class.

We attach no merit to this argument. So long as we carry out testator's intent, we can see no objection, technical or otherwise, to the shifting back to the first class of a part of Alfred's share of income. The significant holding in Nixon is the defeasibility of the grandson's life estate upon his death without issue. The claim of his personal representative that income be awarded to her pur autre vie was there denied. Award of this share of income to his surviving brother followed the usual rule of stirpital distribution to surviving members of the stirps. It was also consonant with distribution of the principal in Rowland's Estate (O. C., Phila., April term, 1888, no. 364), upon death of the last surviving child, Rachel Bomeisler, on May 19, 1929. The adjudication of Judge Thomp-

son of this court on October 17, 1929 (not reported), awarded the one-fifth share of corpus descended from testator's daughter, Fanny Tobiason, to Abby A. Tobiason, the sole surviving child of Fanny after the death on October 24, 1925, of Abby's sister, Amelia. Pursuant to the accountant's request, Judge Thompson made distribution in accordance with the decision of our Supreme Court in 151 Pa. 25.

Numerous decisions of both appellate courts in Pennsylvania have established "as a *policy of interpretation* that where under a trust created by a testator income is payable to a class, and one of the class dies without issue, the income formerly payable to him will be awarded to the survivors of the class rather than to his personal representative, *unless a contrary intent clearly appears* from the will. . . In the absence of such a *clearly expressed contrary intent*, the gift of income to the class is construed to be a life estate, with remainder over to living issue, (Rowland's Est., 151 Pa. 25, 29), the purpose being to deal with the beneficiaries in classes and upon the death of any one without issue, the class as to him fails, and his life estate falls in. . ." (Italics supplied) : Smith's Estate, 110 Pa. Superior Ct. 469, 474. To the same effect are Maxwell's Estate, 261 Pa. 140; Huddy's Estate, 257 Pa. 528; Trainer's Estate, 120 Pa. Superior Ct. 149; Boyer's Estate, 115 Pa. Superior Ct. 501; McCabe Estate, 35 D. & C. 2d 497; Brock's Estate, 42 D. & C. 466.

Judge Hunter, our former colleague, whose proficiency in the construction of wills has been acknowledged throughout the Commonwealth, states the rule in his treatise on orphans' court law as follows:

"Survivorship among multiple and shifting classes: Where income is to be distributed periodically among a shifting class of children or their issue *per stirpes*, until the termination of a trust upon the death of a

last survivor, and the intention of the testator is to benefit only living persons, and to limit the succession of the shares to survivors, the distributees take life estates only, and upon the death of any, the income goes over to surviving distributees *per stirpes;* the personal representative of a deceased distributee is not entitled to the decedent's shares of the income": O. C. Commonplace Book (2d ed.), vol. 6, Vested and Contingent Interests, §16 (b), page 188.

Additional evidence of testator's intention to benefit only his living issue is the spendthrift clause, item eighth, which protects both income and principal from voluntary and involuntary alienation, and each benefit "is intended in every instance as a strictly inalienable nonanticipatory personal provision for such beneficiaries". Payment of future income to Alfred Leaman's Estate would not be for Alfred's *personal* benefit but for the benefit of his creditors and testamentary heirs. Since testator's will in its entirety favors none but his wife, children and their issue, no inlaws or collaterals, the insertion of the spendthrift clause firmly negates the existence of "a clearly expressed contrary intent" to the established rule governing distribution of class gifts in Pennsylvania. Our Supreme Court, in Wood's Estate, supra, p. 502, found the spendthrift trust provision "undoubtedly persuasive in support of this conclusion", viz., the testamentary intent to benefit living issue only. So also in Huddy's Estate, supra, p. 532, and Nixon's Estate, supra, p. 266.

Houston Estate, 414 Pa. 579, which counsel for the Leaman Estate has urged upon us, we deem inapposite because there was no income problem involved, principal was bestowed per capita expressly and absolutely, and other bequests in a very long and "skilfully drawn will" convinced the Supreme Court that

testator knew how to make gifts contingent when he so desired.

When the time arives for distribution of the principal upon the death of Carroll H. Carter, only living grandchildren of testator and living issue of deceased grandchildren will share on a stirpital basis. Probably there will be no more than three stirpes, because Carroll is advanced in years and without issue. Presently, the Hammett, H. L. Carter, Jr., and Phillips lines all have issue down to the fourth and even fifth generation of testator's descendants. Testator has directed that the principal "shall be divided into as many equal shares as I shall have children leaving lineal descendents them surviving". The Leaman Estate argues that "them surviving" is not the same as "then surviving", that it means surviving "any" of testator's children, but not "all of them". The latter seems to us to be the more natural meaning. In the present context, however, we deem the difference immaterial. Since the date for distribution is expressly and unequivocally set for "Upon the death of my last surviving child", we hold that "lineal descendants" in this gift to classes must survive, and must not fail, until that time. It is not enough that a child left issue immediately surviving him; the stirps in order to inherit must continue until the time which testator has set for distribution.

Although testator has provided only that "each such equal share shall be paid over to my said grandchildren", we cannot limit testator's use to the usual, narrow definition meaning third generation. We note that in this fourth item there is a lack of technical precision, even though the will was undoubtedly lawyer drawn. In referring to his children's descendants, testator has used "issue" seven times, "grandchildren" twice, and "descendants" once. Legal draftsmanship has yielded to the rhetorical rule which avoids redun-

dancy. A will of approximately the same vintage as the Carter will furnishes a precedent for the indiscriminate use of "grandchildren", "issue" and "descendants", as reported in Ball v. Weightman, 273 Pa. 120, 123, where the court said that "this supports the conclusion that either term was intended to include all". The number of principal shares is determined by the number of children whose "lineal descendants" have survived the death of testator's last child. It is these lineal descendants, referred to as "my said grandchildren", who take "absolutely per stirpes and not per capita". "Said" modifies grandchildren, but since the word "grandchildren" is not previously used in item fourth, we must look for another antecedent and we find it in the phrase "lineal descendants". This, of course, enlarges the class of distributees beyond grandchildren and includes issue of grandchildren who are no longer living.

We cannot overlook the fact that this will provides for distribution of corpus in *precise* "pay and divide" language, which was a rhetorical device for expressing contingency well known to all scriveners of the past century and frequently utilized by them for the purpose of preventing an early vesting. In Houston Estate, supra, at page 595, the court said: "[W]here a testator uses words which have a legal or technical meaning, ' "they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary" ' ". We accept the admonition of our Supreme Court that this rule is no longer to be relied on as a special rule of construction (Dickson Estate, 396 Pa. 371, 374), but the words of art which this draftsman chose in 1903 do postpone vesting and thereby confirm our construction of the other language in the will. The pay and divide terminology should not be ignored.

In conclusion, we recall the final distribution of corpus made by Judge Thompson of this court in Rowland's Estate, to which we have already referred. His decision was sound and should be followed where, as here, the language of the will, testator's scheme of distribution and the existing facts all point to the same polestar of testamentary intent.

For the above reasons, the exceptions to the amended adjudication are dismissed. The executor of the will of Alfred V. Leaman, 3rd, has filed exceptions to the opinion, the conclusions and the holdings of Judge Saylor sur petition for declaratory judgment. That portion of Judge Saylor's opinion which "holds that testator's will taken as a whole, included an intent to benefit his issue to the exclusion of all others and that he chose as an instrument of that intent a class gift, and that upon the death of a member of the class the member's personal representative acquired no interest in the principal. When the trust terminates no part of the principal thereof can be awarded to the estate of Alfred V. Leaman, 3rd, deceased" was clearly intended by him to serve as his decree nisi. We have carefully considered the exceptions filed thereto by the executor, and for the reasons which we have stated above said exceptions are hereby dismissed.